**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Steven S. GLICK, Defendant-Appellant.**

No. 82–1375.

United States Court of Appeals,
Tenth Circuit.

June 10, 1983.

Rehearing Denied July 27, 1983.

---

Dennis A. Fischer of Fischer & Hill, Los Angeles, Cal. (Nancy Gaynor, Fischer & Hill, Los Angeles, Cal., and Michael S. Axt, Denver, Colo., with him on the brief), for defendant-appellant.

Charles H. Torres, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., with him on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, and BREITENSTEIN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Steven Glick was convicted after a jury trial of eight counts of mail fraud, 18 U.S.C. § 1341 (1976),[1] and two counts of travel in interstate commerce to execute a scheme to defraud, 18 U.S.C. § 2314 (1976).[2] On appeal, Glick argues that the court improperly instructed the jury on the issue of fraudulent intent, and that he was denied effective assistance of counsel because his attor-

---

1. 18 U.S.C. § 1341 (1976) provides:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

2. 18 U.S.C. § 2314 (1976) provides in pertinent part:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more; . . .

" . . .

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

Glick was also charged under 18 U.S.C. § 2(a) (1976) with aiding and abetting the above crimes.

ney failed to conduct adequate pretrial investigation. We affirm.

## I.

### THE FACTS

Viewed in the light most favorable to the Government, *see United States v. Petersen,* 611 F.2d 1313, 1317 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2986, 64 L.Ed.2d 854 (1980), the facts are briefly as follows. Reginald Chisholm, the mastermind of the fraudulent scheme, was described as a man of great charm and personal magnetism. He held himself out during 1975 and 1976 as a very wealthy person who could package and obtain loans for people seeking financing. He charged a nonrefundable front fee for this service. Chisholm told his victims that as part of his service he would guarantee the loans, and that his guarantee would carry weight with lending institutions because of his wealth. To support these representations, Chisholm showed his victims financial statements describing Chisholm's personal wealth and that of three corporations he owned or controlled. These statements were prepared by Glick, a certified public accountant, and included letters by Glick declaring that the statements fairly presented the subject's financial position in conformity with generally accepted auditing standards and accounting principles.

The principal asset of Chisholm and his corporations was his claim to mineral rights in limestone formations in National Forest lands. These rights had been transferred by Chisholm to one of his corporations, and then from corporation to corporation, each transfer resulting in an increased valuation of the mining claims.

Chisholm and Glick were indicted, and Chisholm pled guilty prior to trial. Chisholm had previously been convicted in a federal criminal proceeding in Portland, Oregon, on charges apparently arising from other acts involving the same fraudulent plan.

The actual value of Chisholm's mineral rights, and the nature of his title to them, were major issues at Glick's trial. The testimony of the Government's expert, a geologist with the Department of Interior, indicated that the value of the claims was far below that shown on the financial statements. He stated that Chisholm faced insurmountable obstacles in any effort to mine the limestone or to obtain the fee simple title necessary for a proposed real estate development.

Glick testified that before and during the time he had prepared the financial statements, four appraisals had been made that substantially supported the values contained in the statements. Glick was unable to remember the authors or the details of the two earliest appraisals. The third report was prepared by a real estate appraiser, Smith, who was not a geologist and had an interest in the Chisholm business enterprises. Glick testified that he had not accepted the Smith appraisal at face value because Smith was not independent. Glick stated that Smith's results had been verified by another independent real estate appraiser, Goldring, who had based his evaluation on facts and figures supplied by Smith. Although the Smith report was admitted into evidence, Glick was unable to produce the Goldring report.

Chisholm had obtained a fifth appraisal in 1978 in preparation for his Portland trial. This preliminary evaluation, from a geologist named Stickel, stated that one of the mineral claims contained sufficient limestone deposits to warrant consideration of commercial mining. This appraisal was admitted into evidence by stipulation of the parties, although Stickel himself did not testify.

The Government presented expert testimony that the financial statements prepared by Glick contained blatant violations of basic accounting principles. Glick himself had conceded that no lending institution would furnish a loan based on the Chisholm financial statements. Glick testified that he knew Chisholm was obtaining fees by presenting the financial statements to people, claiming that the documents could be used to back up loan applications. How-

ever, Glick testified that he believed the limestone deposits were of considerable value to Chisholm, and that he thought Chisholm's loan packaging business was bona fide when he prepared the financial statements.

## II.

### THE INTENT INSTRUCTIONS

■ "Mail fraud is a specific intent crime. The government is required to prove beyond a reasonable doubt that the defendant intended to defraud." *United States v. Martin-Trigona,* 684 F.2d 485, 492 (7th Cir.1982). The district court gave the following instruction on deliberate ignorance as part of its charge on the type of knowledge which satisfies the requisite fraudulent intent:

> "However, the element of knowledge may be established by proof that a defendant deliberately closed his eyes to what otherwise would have been obvious to him. In other words, the requirement that the defendant has acted knowingly does not mean that the defendant needed to have positive knowledge. If the defendant failed to have positive knowledge only because he conscientiously avoided acquiring it, the requirement of knowledge is satisfied."

Rec., vol. VIII, at 673. On appeal, Glick contends that this instruction is an erroneous formulation of the law because it permitted the jury to convict upon proof of a lesser degree of knowledge than that required by the statute.

In recommending the use of a deliberate ignorance instruction, this court has pointed out that "[w]hile negligence is not sufficient to charge a person with knowledge, one may not wilfully and intentionally remain ignorant of a fact, important and material to his conduct, and thereby escape punishment. The test is whether there was a conscious purpose to avoid enlightenment." *Griego v. United States,* 298 F.2d 845, 849 (10th Cir.1962) (footnotes omitted). Thus, the type of instruction at issue here may be given when the evidence points to deliberate ignorance and conscious avoid-

ance of actual knowledge. *See United States v. Garzon,* 688 F.2d 607, 609 (9th Cir.1982); *United States v. Ciampaglia,* 628 F.2d 632, 642–43 (1st Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221, 449 U.S. 1038, 101 S.Ct. 618, 66 L.Ed.2d 501 (1980); *United States v. Brien,* 617 F.2d 299, 312 (1st Cir.), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980); *United States v. Batencort,* 592 F.2d 916, 918 (5th Cir.1979).

■ Glick argues that giving a deliberate ignorance instruction was inappropriate in light of the evidence presented at trial. This argument is apparently based on Glick's assertion that the record does not contain sufficient evidence of his willful ignorance in the face of facts known to him that would have made obvious the existence of the fraudulent scheme.

In denying Glick's motion for directed verdict, the trial judge determined that the instruction was proper because a reasonable juror could find that Glick had intentionally remained ignorant despite his subjective awareness of facts plainly indicating the fraudulent nature of Chisholm's business. The court specifically noted evidence of Glick's numerous blatant violations of accounting principles and auditing standards, his belief in 1975 that the mineral claim evaluations were unrealistic, his acknowledgment that no one would give a loan on the basis of the financial statements, his knowledge that fees were obtained for packaging loans which would likely not go through, and his knowledge of the nature of the corporate financial activities. This evidence is sufficient to enable a jury to find beyond a reasonable doubt that Chisholm's loan packaging business was a fraudulent scheme from its inception, and that Glick either knew it or deliberately avoided acquiring positive knowledge. Accordingly, we conclude that an instruction on deliberate avoidance was appropriate. *See Griego,* 289 F.2d at 849.

■ Glick also argues that even if a deliberate ignorance instruction was warranted, the form of the instruction given in this case was inadequate because it failed to

require the jury to find that "the defendant was subjectively aware of a high probability of the existence of the fact whose knowledge is imputed, and that knowledge of that fact may not be imputed if the defendant actually believed that such fact did not exist." Brief of Appellant at 17. To insure that a defendant is only convicted if his ignorance is willful, rather than negligent, the preferable form of the instruction informs the jury, in addition to the charge given in this case, "(1) that the required knowledge is established if the accused is aware of a high probability of the existence of the fact in question, (2) unless he actually believes it does not exist." *United States v. Jewell,* 532 F.2d 697, 704 n. 21 (9th Cir.) (en banc), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); *see also United States v. Aulet,* 618 F.2d 182, 190–91 (2d Cir.1980). Glick urges that the court's failure to add this language to its charge is grounds for reversal. We disagree.

3. Specifically, the court said:

"THE COURT: I am happy to change the language. I think the plaintiff is entitled to this theory. If you want to switch it around a little better, take some other language from one of these cases, I am happy to do it.

"MR. BRAUN: I don't think they are entitled. I think I will go further than that. I don't think they are entitled to that theory. I don't think the *Jewell* case is good authority for that. I think the case is—you know—maybe we should say the fundamental problem with citing cases for jury instructions is that a court writes a decision with one purpose in mind and one state of the law and we prepare a jury instruction for the purpose of instructing laymen as to what their duties as jurors are.

"THE COURT: I have no problem in modifying it, if you will give me the suggested language. I think the theory is proper for this case; but I am happy to change the language."

Rec., vol. VIII, at 559–60.

"THE COURT: I would be happy to take the quote right out of [*Jewell*], if you would like to take the quote out of that case." *Id.* at 582.

4. The court instructed as follows on the definition of "knowingly":

"An act is done knowingly if done voluntarily and intentionally and not because of mistake or accident or other innocent reason.

"The purpose of adding the word 'knowingly' is to ensure that no one would be convict-

In response to counsel's general objection to the instruction, the district court repeatedly offered to modify the instruction if counsel wished to propose a language change.[3] Defense counsel responded that his objection was not to the language of the instruction, but to the propriety of such an instruction in any form. Because Glick failed to suggest to the trial court the language he now claims was erroneously omitted, we may reverse only if the omission constitutes plain error. Fed.R.Crim.P. 52(b).

The jury was instructed that Glick could not *deliberately* close his eyes to what would otherwise be *obvious* to him, that he could not be convicted for an act done because of mistake, accident, or innocent reason, and that he was innocent even if he prepared fraudulent financial statements if he did not *intentionally and knowingly participate* in the scheme or artifice to defraud.[4] Although inclusion of the omitted

ed for an act done because of mistake or accident or innocent reason."
Rec., vol. VIII, at 670. It then instructed on fraudulent intent and deliberate ignorance:

".... In order to convict the defendant in this case, you must find that he acted knowingly.

"It is not necessary, however, for the Government to prove that the defendant was aware of every detail of the alleged scheme to defraud, so long as you find beyond a reasonable doubt that he was a knowing participant in the scheme.

"It is not sufficient for you to find beyond a reasonable doubt that Mr. Glick knew the financial statements were used to guarantee loans, since such transactions are legal. For you to convict Mr. Glick, you must find beyond a reasonable doubt that he was aware of the fraudulent aspects of the transactions.

"However, the element of knowledge may be established by proof that a defendant deliberately closed his eyes to what otherwise would have been obvious to him. In other words, the requirement that the defendant has acted knowingly does not mean that the defendant needed to have positive knowledge. If the defendant failed to have positive knowledge only because he conscientiously avoided acquiring it, the requirement of knowledge is satisfied.

"....

"THE COURT: It is not sufficient to merely prove that Steven Glick prepared fraudulent financial statements. The prosecution

language would have been preferable, the omission in this case did not constitute plain error. *See United States v. Cincotta,* 689 F.2d 238, 243–44 (1st Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982); *United States v. Eaglin,* 571 F.2d 1069, 1074–75 (9th Cir.1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978); *Jewell,* 532 F.2d at 704 n. 21.

## III.

### ADEQUACY OF COUNSEL

■ Glick claims he was denied effective assistance of counsel because his trial attorney[5] allegedly failed to conduct adequate pretrial preparation and was therefore unable to present an effective defense at trial. Glick points specifically to counsel's failure both to investigate the existence and nature of the two earliest mineral appraisals and the Goldring appraisal, and to determine the possibility of obtaining favorable independent expert testimony from Stickel concerning the value of the limestone.

"The Sixth Amendment demands that defense counsel exercise the skill, judgment and diligence of a reasonably competent defense attorney." *Dyer v. Crisp,* 613 F.2d 275, 278 (10th Cir.) (en banc), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). In considering an allegation of incompetent counsel, the court must first determine whether the attorney's performance fell below this standard. The court must then determine whether the inadequacy "has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense." *United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981).[6]

The proper standards for evaluating a claim of ineffective assistance of counsel based upon allegations of inadequate trial preparation were recently addressed in *Washington v. Strickland,* 693 F.2d 1243 (5th Cir.1982) (en banc), *petition for cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332. Effective counsel must "conduct a reasonable amount of pretrial investigation," *id.* at 1251, which "will necessarily depend upon a variety of factors including the number of issues in the case, the relative complexity of those issues, the strength of the government's case, and the overall strategy of trial counsel." *Id.*

■ "[A]n attorney who makes a strategic choice to channel his investigation into fewer than all plausible lines of defense is effective so long as the assumptions upon which he bases his strategy are reasonable and his choices on the basis of those assumptions are reasonable." *Id.* at 1256. "Courts presume, in accordance with the general presumption of attorney competence, that counsel's actions are strategic." *Id.* at 1257; *see DuPree v. United States,* 606 F.2d 829, 830 (8th Cir.1979) (per curiam), *cert. denied,* 445 U.S. 919, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980). An attorney's decision not to interview witnesses and to rely on other sources of information, if made in the exercise of professional judgment, is not ineffective counsel. *Plant v. Wyrick,* 636 F.2d 188, 189–90 (8th Cir.1980). "Whether to call a particular witness is a tactical decision and, thus, a 'matter of discretion' for trial counsel." *United States v. Miller,* 643 F.2d 713, 714 (10th Cir.1981). Counsel is not inadequate in failing to call a witness whose testimony would only have been cumulative in nature. *Id.*

must also prove beyond a reasonable doubt that Mr. Glick knowingly participated in the scheme or artifice involved in this case. Thus, if you find that Mr. Glick prepared fraudulent financial statements but did not intentionally and knowingly participate in the scheme or artifice involved in this case, you must find him not guilty."
*Id.* at 672–73.

5. Glick is represented by different counsel on appeal.

6. Because of our conclusion that Glick has failed to establish trial counsel ineffectiveness, we need not decide what degree of prejudice must be shown. *See generally, e.g., Washington v. Strickland,* 693 F.2d 1243, 1258–63 (opinion of the court), 1270–74 (Tjoflat, J., concurring), 1287–88 (Roney, J., dissenting) (5th Cir.1982) (en banc).

In applying the above standards to the allegations before us, we note the lack of any objective showing that the missing appraisals were available, credible, or favorable to Glick. We have only Glick's self-serving statements as to the existence and contents of the two early appraisals and the Goldring report. Moreover, we will presume in the absence of any evidence to the contrary that counsel's decision not to produce the documents, even if they were available, was a matter of trial strategy.

We also conclude that defense counsel's decision not to call Stickel as a witness was a question of trial tactics. The Stickel report, which tended to support Glick's assertion that the limestone was valuable, was admitted into evidence. Counsel stated to the court that he was unsure of Stickel's value as a witness for Glick because Chisholm still owed Stickel about $40,000. Counsel had read the transcript of Stickel's testimony on behalf of Chisholm in the Portland trial, and was thus in a position to evaluate the benefits and drawbacks of calling Stickel to testify for Glick. Under these circumstances, the determination not to call Stickel for the defense was a reasonable tactical decision. *See Washington v. Strickland*, 693 F.2d at 1255. We have considered Glick's other allegations of inadequacy and find them unpersuasive.

Finally, we note that Glick's trial counsel is a criminal law specialist, a former prosecutor, and a member of the California Council of Criminal Justice. He had been hired by the Justice Department to represent United States Attorneys charged with perjury.

After reviewing the record, we agree with the Government that counsel's trial strategy was apparently to convince the jury that the Government had hidden witnesses and documents helpful to the defense. Moreover, the absence of the documents and testimony made it possible for counsel to imply to the jury that the evidence would have been favorable to Glick. We conclude on this record that Glick received effective assistance of counsel.

AFFIRMED.