**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Earl Paul SNYDER,**
**Defendant-Appellant.**

**No. 85–1736.**

United States Court of Appeals,
Tenth Circuit.

April 2, 1986.

Kurt J. Shernuk, Asst. U.S. Atty., Dist. of Kansas, Topeka, Kan. (Benjamin L. Burgess, Jr., U.S. Atty., Dist. of Kansas, Topeka, Kan., with him on briefs), for plaintiff-appellee.

David J. Phillips, Asst. Public Defender, Dist. of Kansas, Kansas City, Kan. (Charles D. Anderson, Federal Public Defender, Dist. of Kansas, Kansas City, Kan., with him on briefs), for defendant-appellant.

Before BARRETT, LOGAN and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.

The defendant, Earl Paul Snyder, an inmate at the United States Penitentiary, Leavenworth, Kansas, was convicted of conveying a weapon (a homemade knife) within the prison, in violation of 18 U.S.C. § 1792 (1982). On appeal, he seeks a reversal of that conviction on two grounds: ineffective assistance of counsel; and, refusal by the trial judge to admit into evidence written statements taken from inmate bystanders, under the business records exception to the hearsay rule, Fed.R.Evid. 803(6). We hold that no error was committed, and affirm.

## BACKGROUND

On January 24, 1984, at about 11:00 a.m., defendant Snyder, who was assigned to work in the furniture factory at the Penitentiary, was observed by the general foreman, Daniel Shaffer, in the unauthorized operation of a belt sander. As Shaffer approached to within a distance of ten to fifteen feet, he saw the defendant, who had been alerted to Shaffer's approach by another inmate, put both hands behind his back in the area of his waistband and began to move in the opposite direction. Upon being challenged by Shaffer and informed of Shaffer's intent to conduct a pat search, defendant protested and walked briskly toward a water cooler, about fifty feet away, where he stood behind inmate Wright. Two or three other inmates were standing five or six feet away. Shaffer, who had followed defendant closely, then saw him place his hands behind his back once more and apparently remove something from his back pocket or waistband. Momentarily, an aluminum knife, sharpened on both sides of the blade, dropped to the floor between defendant and Wright. Shaffer heard the knife hit the floor, immediately picked it up, and noticed that it was very hot. During a strip search conducted at about 12:45 p.m. by correctional officer Thomas Folz, a "blistered, red, burned area," was observed on defendant's upper buttocks. The injury was confirmed shortly thereafter by physician's assistant Kenneth Edmonds, who testified that the red, blistered marks were consistent with burns sustained within the past twenty-four hours.

William Tobin, a special agent with the Federal Bureau of Investigation, testified that laboratory analysis of the sanding belt being used by defendant established that the belt had been used on a metal object having the characteristics of the knife seized in this case.

The incident was investigated by Lieutenant Orvis E. Mowery, who prepared a written report containing, among other things, statements taken by him from inmates Wright and Scroggins. At trial the judge sustained government objections, on grounds of hearsay, first to defense counsel's questions regarding statements in the report attributed to Wright and Scroggins, and then to defense counsel's attempt to have those statements introduced by offering the report in evidence as a business record under Rule 803(6), Fed.R.Evid. Although available, neither prisoner was called by the defense to testify in person.

At the conclusion of the government's case, and again after the defense rested, defense counsel moved for a judgment of acquittal, which motion was denied each time. The defense called no witnesses, and actual trial time was less than one day.

After being found guilty by the jury, but before the date set for sentencing, defendant wrote a letter to the court complaining about deficiencies in his representation by appointed defense counsel. The trial court thereafter allowed counsel to withdraw and on February 27, 1985 appointed the federal public defender to serve as new counsel. A written motion for judgment of acquittal or, in the alternative, for a new trial was then filed, alleging insufficiency of the evidence and ineffective assistance of counsel. Those motions were denied at the time of sentencing, and the court imposed a sentence of two years to be served consecutively to the sentence defendant was presently serving. A timely notice of appeal was filed on May 15, 1985.

### I

The following reasons are given in support of the claim that counsel was so ineffective as to deny defendant his Sixth Amendment right to be assisted by counsel: (a) failure to file any pretrial motions; (b) insufficient trial preparation, in that counsel interviewed defendant only once, for just thirty minutes, failed to take pictures of the area where the incident took place, and interviewed no witnesses; (c) failure to call inmates Wright and Scroggins as witnesses, and to have Lieutenant Mowery's report marked as an exhibit which could at least be reviewed on appeal; (d) refusal at trial either to call witnesses whom defendant wanted called, or to ask more than one question out of the page and one-half of questions he had prepared; and (e) failure to request any jury instructions, especially one concerning the theory of the defense.

We measure defendant's ineffective counsel argument against the tests established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), recently summarized in pertinent part by another panel of this court in *United States v. Merle Allan Jones,* Nos. 84–2616 and 84–2807, slip op. at 3–4 (10th Cir. Feb. 28, 1986), as follows:

"In order to prevail on [an ineffective counsel argument], the defendant must show that his attorney made 'errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment' and that 'counsel's' errors were prejudicial; that is, 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The court pointed out that because of the distorting effect of hindsight, a reviewing court must exercise care in determining whether counsel's actions fall below an objective standard of reasonableness.

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was

unreasonable.... Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

466 U.S. at 689–70, 104 S.Ct. at 2065–66 (citations omitted).

The court in *Strickland* placed on each defendant claiming ineffective counsel the burden of identifying the acts or omissions of prior counsel which were not 'the result of reasonable professional judgment.' 466 U.S. at 690, 104 S.Ct. at 2066. In that light, the defendant must also show the alleged errors of counsel were prejudicial and that they actually had an adverse effect on the defense.

It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.

....

... The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

466 U.S. at 693, 695, 104 S.Ct. at 2067–68 (citations omitted)."

■ Applying those standards, we conclude that defendant has not demonstrated his trial counsel was ineffective. Defendant lists many acts and omissions which he asserts were prejudicial; but, in each instance, he has shown neither actual prejudice nor a reasonable probability of prejudice. Rather, he asks us to speculate as to one of several inferences which could be drawn from each act or omission assigned by defendant as an error of counsel. Thus,

it is argued that certain witnesses should have been called, including inmates Scroggins and Wright; but we are not told what their testimony would have been, or shown how the reliability of the outcome of the proceeding was actually compromised by the omission of that particular testimony. Defendant speculates that "[t]he report of the investigating Lieutenant, Mowery, obviously contained favorable statements by inmates Wright and Scroggins"; Appellant's Opening Brief at 12, and, "[b]ecause the government's evidence was based on circumstantial evidence, any defense evidence may have been sufficient to cast doubt upon the government's evidence," *id.* at 13. But, it is at least as reasonable, and maybe more so, to speculate that the testimony of those witnesses would have damaged defendant's case, given the possibility of harmful statements, the inherent problem of credibility of fellow inmates, and their vulnerability on cross-examination. Whether "to call a particular witness is a tactical decision and, thus, a matter of discretion for trial counsel." *United States v. Miller*, 643 F.2d 713, 714 (10th Cir.1981); *see also United States v. Janoe*, 720 F.2d 1156, 1162 (10th Cir.1983), *cert. denied* 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 707 (1984); *United States v. Glick*, 710 F.2d 639, 644 (10th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 229 (1984).

■ Similarly, defendant complains that his questions were not asked, but does not identify what should have been asked or how the verdict was affected by the omission. Counsel's selection of questions is a matter of "strategic choice," as to which he has broad latitude. *Glick*, 710 F.2d at 644. The same is true with respect to defendant's complaint that his counsel did not photograph the area in question, a particularly weak assertion in view of the fact that a detailed diagram of the area was admitted into evidence and used in examining witnesses.

■ The same problem of speculation and competing inferences infects the charge that trial preparation was ineffec-

tive. Defendant complains that no motions were filed, but fails to identify one which, if filed, would have affected the outcome of the case.[1] Defendant also complains that he was interviewed for only thirty minutes and that no witnesses were interviewed by counsel, but fails to identify any fact which counsel should have, but did not, glean, which if properly developed would have affected the outcome of the proceedings.

■ We view counsel's conduct against the backdrop of what was manifestly an uncomplicated case, and a short trial. In *Glick*, 710 F.2d at 644, we noted that the amount of necessary investigation depends on a variety of factors including the number of issues in the case, the relative complexity of those issues, and the overall strategy of trial counsel. "[A]n attorney who makes a strategic choice to channel his investigation into fewer than all plausible lines of defense is effective so long as the assumptions upon which he bases his strategy are reasonable and his choices on the basis of those assumptions are reasonable." *Id.* Similarly, "An attorney's decision not to interview witnesses and to rely on other sources of information, if made in the exercise of professional judgment, is not ineffective counsel." *Id.; see also, Plant v. Wyrick,* 636 F.2d 188, 189–90 (8th Cir.1980).

The strategy employed by defendant's counsel at trial was to attack the circumstantial nature of the government's case, emphasizing that no one had actually seen defendant with the knife in question. Counsel pursued that strategy consistently throughout the trial, from his opening statement, extending to cross-examination of each government witness, and concluding, in detail, with his closing argument. Counsel also participated intelligently in the jury selection process, and in the judge's choice of jury instructions. His questioning and conduct throughout the trial demonstrated comprehension of his case and an acceptable level of skill and experience.

In summary, the strong presumption that counsel provided effective assistance easily overcomes defendant's selective inferences, and we have no trouble finding that counsel's performance was both reasonable and effective considering all the circumstances, and that it falls within the "wide range" of acceptable professional assistance. *See Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *United States v. Espinosa,* 771 F.2d 1382, 1411 (10th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 579, 88 L. Ed. 2d 561 (1985).

## II

Defendant's second contention is that the statements of inmates Scroggins and Wright should have been admitted as evidence under the business records exception to the hearsay rule, Fed.R.Evid. 803(6),[2] because they were included in the investigating officer's written report which was prepared in the ordinary course of his official duties. We disagree.

■ The business records exception is based on a presumption of accuracy, accorded because the information is part of a regularly conducted activity, kept by those trained in the habits of precision, and customarily checked for correctness, and be-

---

1. Only those motions having a solid foundation, not every possible motion, should be filed. *United States v. Afflerbach,* 754 F.2d 866, 870 (10th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985).

2. Rule 803(6) reads as follows:
   (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business ac-

tivity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

cause of the accuracy demanded in the conduct of the nation's business. *United States v. Baker*, 693 F.2d 183, 188 (D.C.Cir. 1982) (citing *McCormick, Evidence*, § 306, at 720 (2d ed. 1972)). The reason underlying the business records exception fails, however, "if any of the participants is outside the pattern of regularity of activity." *J. Weinstein & M. Berger, Weinstein's Evidence*, at 803–186 (1985); *see also United States v. Plum*, 558 F.2d 568 (10th Cir. 1977); *United States v. Baker*, 693 F.2d at 188; *United States v. Robertson*, 588 F.2d 575 (8th Cir.1978), *cert. denied*, 441 U.S. 945, 99 S.Ct. 2166, 60 L.Ed.2d 1048 (1979).

 As the advisory committee's note to Rule 803(6) provides:

"If however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail. *An illustration is the police record containing information by the bystander; the officer qualifies as acting in the regular course but the informant does not.* (Emphasis supplied).

Thus, it is well established that although entries in a police or investigating officer's report which result from the officer's own observations and knowledge may be admitted, statements made to the officer by third parties under no business duty to report may not. *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir.1983); *Meder v. Everest & Jennings, Inc.*, 637 F.2d 1182, 1186–1187 (8th Cir.1981); *United States v. Yates*, 553 F.2d 518, 521 (6th Cir.1977); *United States v. Smith*, 521 F.2d 957, 964 (D.C.Cir.1975).

The statements attributed to Scroggins and Wright fall within the third party category. They were mere bystanders, obviously not acting in the regular course of business, and their statements as recorded by Officer Mowery cannot be given the presumption of reliability and regularity accorded a business record. *United States v. Pazsint*, 703 F.2d at 425. To allow the

introduction of their statements would impermissibly insulate them from the test of cross-examination, and would distort the plain purpose of the business records exception. We hold that the trial court did not err in refusing to admit the statements of the two inmates as part of Officer Mowery's written report.

JUDGMENT AFFIRMED.