**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gregorio MANRIQUEZ ARBIZO, Defendant–Appellant.**

No. 86–2347.

United States Court of Appeals, Tenth Circuit.

Nov. 13, 1987.

Nancy Hollander, of Freedman, Boyd & Daniels, P.A., of Albuquerque, N.M., for defendant-appellant.

Presiliano A. Torrez, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before McKAY and TACHA, Circuit Judges, and ALLEY,* District Judge.

TACHA, Circuit Judge.

Defendant Gregorio Arbizo appeals from a jury verdict finding him guilty of possession of marijuana with intent to distribute, interstate travel in aid of racketeering, and

---

* The Honorable Wayne E. Alley, United States District Judge for the Western District of Oklahoma, sitting by designation.

aiding and abetting in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B), 18 U.S.C. § 1952(a)(3), and 18 U.S.C. § 2. For the reasons set forth below, we affirm the conviction.

In January 1986 a New Mexico state police officer stopped an automobile driven by Fred Paul for a traffic offense. With the consent of Paul, the officer searched the vehicle and found approximately 150 pounds of marijuana loaded in several trash bags spread throughout the interior and trunk of the car. The officer arrested Paul, who decided to cooperate with the police in apprehending the supplier of the marijuana.

Paul told police he was hauling the marijuana for Arbizo. Paul said he picked up the marijuana from Arbizo in Tucson, Arizona, placed it inside a rented car, then drove to New Mexico where he was arrested.

At the instruction of the police, Paul called Arbizo in Tucson and told him the car's transmission had broken down in Moriarty, New Mexico. Paul explained that the car had to be towed into Albuquerque, leaving him stranded in a motel in Moriarty with the marijuana. Paul told Arbizo he would not leave the motel for fear the maid would discover the marijuana.[1] Arbizo said he would leave Tucson to help Paul within an hour and a half. The police loaded the bags of marijuana into a room at the motel and waited.

Approximately ten hours later, shortly after two in the morning, Arbizo arrived by car accompanied by Leroy Michael. Arbizo and Michael entered the motel room, but Arbizo immediately came back outside to position the car so the trunk faced the motel door. Michael joined Arbizo in unloading the articles from the trunk of the car and placing them in the backseat. Then Arbizo, Michael, and Paul rapidly transferred the bags of marijuana from the motel to the trunk of the car. Six minutes after their arrival, as they were preparing to leave, Arbizo and Michael were arrested.

Arbizo and Michael were tried together. Both were charged with possession of marijuana with intent to distribute and interstate travel in aid of racketeering. Both counts charged the defendants with aiding and abetting under 18 U.S.C. § 2. At trial, Paul testified Arbizo gave him the marijuana in Tucson on consignment; Paul was to pay Arbizo when Paul resold the marijuana. He testified at length about Arbizo's direct involvement in the transaction including initially discussing the deal with Paul by telephone, loading the bags into the car, spraying the car with disinfectant to mask the odor, and discussing the price Arbizo was to receive when Paul sold the marijuana. Arbizo declined to take the stand. He was convicted under both counts of the indictment.[2]

Arbizo's appeal alleges: (1) the trial court erred in prohibiting the defendant from commenting in closing argument on the testimony of a witness, (2) the prosecutor argued facts and inferences outside the evidence, and (3) the court erred in instructing the jury on guilty knowledge.

I.

■ At the beginning of trial, the court ruled the United States could introduce evidence, through its informant Fred Paul, of previous marijuana transactions between Paul and Arbizo pursuant to Federal Rule of Evidence 404(b). Paul's testimony indicated that he and Arbizo had exchanged over one hundred phone calls between October 1984 and January 1986, the month of the arrest. Later, the trial court limited its original ruling by restricting the government to introducing only evidence of activities between Paul and Arbizo between November 1985 and January 1986. The government called Vicki Mason, the custodian of records for the telephone company, in an effort to corroborate Paul's testimony

---

1. Pursuant to a longstanding agreement with Arbizo, Paul did not use the word marijuana during the conversation. Instead, Paul referred to the contraband as "tires."

2. Michael was convicted solely of possession with intent to distribute. This court has affirmed Michael's conviction. *United States v. Michael*, unpublished No. 86–2344 (10th Cir. Nov. 13, 1987).

regarding the telephone calls. Because of the court's later ruling the government was not allowed to use Mason to corroborate any calls occurring before November 1985. Therefore, Mason could only verify seven phone calls between Paul and Arbizo during the period beginning in November 1985.

After Mason testified, the trial court admonished defense counsel that it would not allow the defense to use the limitation on the relevant dates and phone calls, and Mason's testimony, as a basis to impeach Paul's statements that over one hundred phone calls were made. Before closing argument, defense counsel asked the court's permission to comment on Mason's testimony. The court prohibited the defense from doing so in any manner.

Arbizo alleges this denial amounted to constitutional error, citing *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed. 2d 593 (1975). *Herring* held that absolute denial of the opportunity for closing summation is a denial of the defendant's sixth amendment rights. The Court in *Herring* emphasized, however, that trial judges retain broad discretion in limiting the scope of closing arguments. *Id.* at 862, 95 S.Ct. at 2555.

In the present case, the judge initially limited the scope of Mason's testimony in order to protect the defendant. The trial court's exclusion of defense's closing comment on Mason's testimony was consistent with its earlier ruling prohibiting the impeachment of Paul on this basis. Finally, the comment was excluded for purposes well within the court's discretion. We find the court did not abuse that discretion and thus committed no error.

## II.

Arbizo claims the prosecutor argued facts and inferences outside the evidence during summation. While arguing that the evidence supported a conclusion that Arbizo was "calling the shots," the prosecutor said:

Now, you know, you're not supposed to listen to what the lawyers say—I mean, take it as evidence, but I think it's inter-

esting to note that Ms. Hollander in cross examination of Mr. Paul, said you're a hauler of marijuana.

It seems to me that her question to Paul seemed to give—at least she had it in her mind that he wasn't the source of marijuana, he was the hauler of marijuana.

MS. HOLLANDER: Your Honor—

THE COURT: This is proper final argument, Ms. Hollander. Objection's overruled.

Arbizo alleges this statement by the prosecution argued facts which were not in evidence (defense counsel's state of mind) and it implied defense counsel believed Arbizo was guilty as a supplier of marijuana.

The prosecutor is allowed a reasonable amount of latitude in drawing inferences from the evidence during closing summation. *United States v. Nolan*, 551 F.2d 266, 274 (10th Cir.), *cert. denied*, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977). This latitude, however, does not extend to improper suggestions, insinuations or assertions of personal knowledge. *See Berger v. United States*, 295 U.S. 78, 88–89, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); *see also* Standards for Criminal Justice § 3–5.8(a) (2d ed. 1980) ("It is unprofessional conduct for the prosecutor intentionally to ... mislead the jury as to the inferences it may draw."). The prosecutor's remark, referring to what defense counsel must have been thinking, placed an improper inference into the minds of the jurors and was clearly inappropriate.

However, we cannot review this comment in a vacuum. We are reminded by the Supreme Court that:

"[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial. ...

[We have] consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to

ignore errors that are harmless, including most constitutional violations....

*United States v. Hasting,* 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983).

█ Thus, we are limited in our review and we will not overturn the verdict on this basis "unless the misconduct 'was enough to influence the jury to render a conviction on grounds beyond the admissible evidence presented.'" *United States v. Espinosa,* 771 F.2d 1382, 1401 (10th Cir.) (quoting *United States v. Dickey,* 736 F.2d 571, 596 (10th Cir.1984), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985)), *cert. denied,* 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985). In the context of the entire record in this case, we find the prosecutor's comment was not so egregious as to influence the jury to convict Arbizo on evidence not in the record. The comment was singular and isolated. Further, the government put on substantial independent evidence of Arbizo's guilt and the trial court instructed the jury that the attorneys' arguments were not to be considered as evidence. *See Espinosa,* 771 F.2d at 1401. Arbizo was not prejudiced by the comment, and thus we will not reverse on this ground.

### III.

Finally, Arbizo alleges error in the court's instruction to the jury on guilty knowledge. Count one of the indictment charged Arbizo with "knowingly and intentionally" possessing marijuana with intent to distribute. 21 U.S.C. § 841(a)(1). The district court gave the following instruction explaining how "deliberate ignorance" itself may be circumstantial proof of the existence of the necessary scienter of knowledge of illegal conduct:

> The element of knowledge may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him.
>
> A finding beyond a reasonable doubt of a conscious purpose to avoid enlightenment would permit an inference of knowledge.

> Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact.
>
> It is entirely up to you as to whether you find any deliberate closing of the eyes and the inference to be drawn from such evidence.
>
> A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge.

Arbizo's counsel made a timely and proper objection to this instruction.

### A.

Arbizo argues the facts of his case were insufficient to warrant giving the instruction. He alleges the instruction allowed the jury to convict him on a negligence standard of knowledge—that he should have known his conduct was illegal—rather than the higher standard of actual knowledge required by the statute.

█ We have previously approved the giving of a similar instruction. *United States v. Glick,* 710 F.2d 639, 642–44 (10th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 229 (1984). The purpose of such an instruction is to alert the jury to the fact that the act of avoidance of knowledge of particular facts may itself circumstantially show that the avoidance was motivated by sufficient guilty knowledge to satisfy the statute. The quoted instruction makes that clear. It informs the jury that it may look at the charade of ignorance as circumstantial proof of knowledge. It does not authorize conviction of one who in fact does not have guilty knowledge. One can in fact not know many detailed facts but still have enough knowledge to demonstrate consciousness of guilty conduct sufficient to satisfy the "knowing" element of the crime. In effect, the instruction is nothing more than a refined circumstantial evidence instruction properly tailored to the facts of a case like this.

█ We agree with Arbizo that if the evidence against the defendant points solely to direct knowledge of the criminal ven-

ture, it would be error to give the instruction. *See United States v. Alvarado*, 817 F.2d 580, 584 (9th Cir.1987); *United States v. Garzon*, 688 F.2d 607, 609 (9th Cir.1982). The danger in giving the instruction where there is evidence of direct knowledge but no evidence of avoidance of knowledge is that the jury could still convict a defendant who merely should have known about the criminal venture. However, Arbizo's case presents evidence supporting both actual knowledge and deliberate avoidance of knowledge of some details of the transaction, either of which justified the verdict, thus eliminating this concern.

The record includes evidence of several phone calls between Arbizo and Fred Paul leading to an arrangement whereby Paul would haul the marijuana out of state and sell it on consignment. Evidence shows Arbizo helped load bags of marijuana into Paul's car in Arizona, sprayed the bags with a disinfectant to mask the odor, and discussed the price Paul was to pay Arbizo when Paul sold the marijuana. Paul testified to a longstanding agreement between himself and Arbizo not to use the word "marijuana," but instead to use the word "tires" when discussing any transactions. The record further shows that Paul made a call to Arbizo from New Mexico, at which time Paul said his car had broken down, he needed transportation, and he could not leave his motel room for fear a maid would discover the "tires." Arbizo then traveled ten hours through the night to New Mexico to meet Paul. When he arrived at Paul's motel he rapidly loaded the bags, which had been covered in a shower stall, into his car trunk and attempted to leave.

■ Although the jurors received abundant evidence of Arbizo's direct knowledge of the contents of the bags when he was arrested at the motel, other evidence of conscious avoidance in the face of subjective awareness was also before them. If Arbizo did not know the contents of the bags, then the long distance phone call from Paul, the lack of any "tires" in the motel room, the ten garbage bags piled and covered in the shower stall, and Arbizo's help in the hasty loading of the bags in the

car at 2:00 a.m. evidences a conscious avoidance of the fact the bags contained marijuana. This avoidance is further demonstrated by the fact Paul testified the bags in the motel room were the same bags Arbizo had sprayed and loaded into Paul's car a few days earlier. Because the evidence was sufficient for a jury to find beyond a reasonable doubt Arbizo either directly knew or circumstantially knew by deliberately avoiding acquiring knowledge of the contents of the bags, the instruction was appropriate. *See Glick*, 710 F.2d at 642.

**B.**

Arbizo also argues the form of the instruction given was improper. Arbizo contends that even if a guilty knowledge instruction was appropriate, the trial court erred by not including language explaining that the defendant must be subjectively aware of a high probability the fact in question did exist.

We recognize the danger of giving this type of instruction without fully explaining deliberate ignorance to the jury. In *Glick* we stated:

> To insure that a defendant is only convicted if his ignorance is willful, rather than negligent, the preferable form of the instruction informs the jury, in addition to the charge given in this case, "(1) that the required knowledge is established if the accused is aware of a high probability of the existence of the fact in question, (2) unless he actually believes it does not exist."

710 F.2d at 643 (quoting *United States v. Jewell*, 532 F.2d 697, 704 n. 21 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976)).

■ In the present case we find the district court's failure to add the proposed language does not warrant reversal. We are satisfied the jury was adequately informed that Arbizo could not be convicted on the basis of negligent ignorance of apparent facts nor on the basis of a mistaken, subjective belief of what the bags contained. The jury was specifically told "a showing of negligence or mistake is not

sufficient to support a finding of willfullness or knowledge." The jury was further charged that, in order to convict Arbizo, it must find he had a "conscious purpose" to avoid enlightenment or a "deliberate" closing of the eyes to what would be obvious to him. Moreover, the jury was instructed Arbizo could only be convicted if he "knowingly did an act . . . intending to violate the law," and that the term knowingly "means the act was done voluntarily and intentionally and not because of mistake or accident or other innocent reason." While we emphasize our preference for the precise qualifying language set out in *Glick*, we find that the instructions given in this case were sufficient.

Appellant's motion for release is denied. The judgment of conviction is affirmed.