**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Eduardo de FRANCISCO–LOPEZ,**
**Defendant–Appellant.**

**No. 90–4019.**

United States Court of Appeals,
Tenth Circuit.

July 17, 1991.

Rehearing Denied Oct. 1, 1991.

---

Suzanne K. Cavanaugh, Bountiful, Utah, for defendant-appellant.

Dee Benson, U.S. Atty., and David J. Schwendiman, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

PER CURIAM.

Eduardo de Francisco–Lopez was convicted of possession with intent to distribute five kilograms or more of a mixture containing cocaine. He appeals, claiming that the conviction was not supported by sufficient evidence and claiming that the jury should not have been instructed concerning deliberate ignorance of an operative fact. We agree that deliberate ignorance instruction should not have been given to the jury, and we reverse.

Mr. Lopez, who lived with his wife and child in Los Angeles, was driving alone from Los Angeles to New York City when he was stopped by Utah state highway patrolmen for speeding on the interstate highway. During the stop, one of the officers noticed that the rear door vents on the car were held in place by pop rivets instead of the factory-installed Phillips-head screws. After Mr. Lopez consented to a search of the car, the patrolman determined that there were hidden sheet metal compartments cleverly welded in the car's frame, containing what appeared to be drugs. Mr. Lopez was placed under arrest and, under a search warrant, the car was partially dismantled. Approximately fifteen kilograms of nearly pure cocaine, packaged for distribution, were extracted from the compartments.

Mr. Lopez was indicted on one charge, that he did "knowingly and intentionally possess with intent to distribute approximately fifteen (15) kilograms of a mixture containing cocaine, a Schedule II controlled substance within the meaning of 21 U.S.C. § 812; all in violation of 21 U.S.C. § 841(a)." R. Vol. I tab 1. Of the four elements which make up this charge—possession, scienter, involvement with a scheduled controlled substance, and intent to distribute—only the scienter requirement was contested before the jury. It was uncontroverted at trial that Mr. Lopez was in at least constructive possession of the cocaine, see United States v. Culpepper, 834 F.2d 879, 881 (10th Cir.1987) (exercise of dominion and control of location of narcotics constitutes constructive possession), because there was sufficient nexus between Mr. Lopez, the car and the drugs. See id. at 882. The parties stipulated that the material discovered in the car consisted of approximately fifteen kilograms of ninety-two to ninety-nine percent pure cocaine. R. Supp. Vol. I at 161–65. There was no question raised that the quantity, packaging, and purity of the cocaine found in the car's hidden compartments were consistent with cocaine which was in the middle of the distribution process. See United States v. Parrish, 925 F.2d 1293, 1297 (10th Cir. 1991) ("A large quantity of cocaine can be sufficient to support a judgment that a defendant intended to distribute the drug."). However, Mr. Lopez consistently denied that he knew the cocaine was in the car and, after the prosecution's evidence was presented at trial, moved unsuccessfully for dismissal on the grounds that the circumstantial evidence upon which the prosecution relied was insufficient to find guilt beyond a reasonable doubt.

The prosecution's case consisted of inferences arising from the unusual circumstances by which Mr. Lopez came into possession of the car and was driving it from Los Angeles to New York; a telephone call to Los Angeles from the motel at which he spent the first night on the road; and two isolated comments which he made to law enforcement officials after he was stopped for speeding. Mr. Lopez, who was experienced in auto mechanics, claims to have been hired by a mysterious stranger known to Mr. Lopez only as "Juan" to do some minor repair work on the car and then, about three weeks later, to drive it to New York. Mr. Lopez did not immediately accept the offer, but he did accept cash for expenses and payment, and eventually repaired the car and set off on his journey with minimal direction where he was to drop off the car. His first night on the road to New York, he made a six-minute telephone call from his motel room to a person in Los Angeles that he testified he had not seen in years. The highway patrolman testified that when Mr. Lopez was stopped for speeding, he told the highway

patrol officers that he was driving to New York to see "his lady and her child." R. Supp. Vol. I at 125. Finally, after the drugs were found and he had been arrested, he asked an FBI agent, "How many?" *Id.* at 98.

Mr. Lopez was sentenced to ten years in prison, to be followed by five years of conditional probation. He timely appealed, raising two issues: (i) whether there was sufficient evidence for a jury to find beyond a reasonable doubt that he was guilty of the charged crime, and (ii) whether it was error for the court to have instructed the jury concerning "deliberate ignorance" of the presence of the drugs found hidden in the car.[1]

## I.

■ The standard by which we judge Mr. Lopez' argument that the evidence was insufficient for conviction is well-established. "The evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Hooks,* 780 F.2d 1526, 1531 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986).

In the case before us, the prosecution relied on circumstantial evidence as proof that Mr. Lopez had actual knowledge that the car contained controlled substances. The prosecution dismissed many parts of Mr. Lopez' narrative as unbelievable fabrications and substituted what it considered to be a more believable hypothesis for the events leading up to Mr. Lopez' arrest. That hypothesis, of course, included the assumption of actual knowledge by Mr. Lopez of his criminal activity. Under the challenge of credibility, there was abundant circumstantial evidence by which the jury could properly infer beyond a reasonable doubt that Mr. Lopez had actual knowledge he was transporting a large amount of cocaine with intent to distribute.

Mr. Lopez argues the evidence was insufficient on two grounds. First, he contends the evidence was wholly circumstantial. However, circumstantial evidence, taken together with any reasonable inferences which flow from such evidence, is sufficient to establish guilt beyond a reasonable doubt. *See id.* at 1529.

Second, he argues that the evidence presented could have been consistent with either innocence or guilt. This issue has also been addressed and resolved by this court. We have rejected the suggestion that the appellate court should review the evidence to determine whether it was consistent with a finding of innocence. *Id.* at 1531. The reviewing court may not substitute its judgment for the jury's determination whether the evidence at trial was sufficient to establish guilt beyond a reasonable doubt. *Id.* (citing *Woodby v. Immigration & Naturalization Serv.,* 385 U.S. 276, 282, 87 S.Ct. 483, 486, 17 L.Ed.2d 362 (1966)).

> [T]he appropriate inquiry is whether *a reasonable jury* could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. [307,] 319 [, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)]. Thus, it is anomolous [sic] to suggest that the appellate court should evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence.

*Id.* (emphasis in original); *see also Parrish,* 925 F.2d at 1297 ("[T]he evidence required to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt."); *cf. United States v. Nelson,* 419

---

1. Because Mr. Lopez did not raise these issues in the district court, we review them on appeal for plain error under Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.") *See United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (Under the plain error standard, reversal is required only to correct "particularly egregious errors, those errors that seriously affect the fairness, integrity or public reputation of judicial proceedings."); *United States v. Smith,* 919 F.2d 123, 124 (10th Cir.1990); *United States v. Mitchell,* 783 F.2d 971, 977 (10th Cir.), *cert. denied,* 479 U.S. 860, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986).

F.2d 1237, 1245 (9th Cir.1969) (appellate court must not substitute its analysis for that of the jury because it may consider inferences "which, though entirely possible or even probable, are drawn from evidence which the jury may have disbelieved").

## II.

■ Mr. Lopez' second argument, whether the deliberate ignorance instruction was properly tendered to the jury, is more difficult. We examine jury instructions as a whole to evaluate their adequacy, and examine *de novo* the propriety of tendering an individual jury instruction. *See United States v. Sanchez–Robles*, 927 F.2d 1070, 1073 (9th Cir.1991). When reviewing the tender of a deliberate ignorance jury instruction, we view the evidence in the light most favorable to the government. *United States v. Fingado*, 934 F.2d 1163, 1166 (10th Cir.1991).

■ In the context of the instruction we must analyze, "deliberate ignorance" refers to circumstantial evidence that the person against whom it is employed has actual knowledge of a fact in issue. Employing such circumstantial evidence allows the government to prove a defendant had actual knowledge of an operative fact by proving deliberate acts committed by the defendant from which that actual knowledge can be logically inferred. *See United States v. Ochoa–Fabian*, 935 F.2d 1139, 1141–1142 (10th Cir.1991). The acts relied upon, however, must be deliberate and not equivocal, otherwise the defendant's acts do not imply the avoidance of knowledge which is the key to the inference of actual knowledge. "A deliberate ignorance instruction alerts the jury 'that the act of avoidance of knowledge of particular facts may itself circumstantially show that the avoidance was motivated by sufficient guilty knowledge to satisfy the ... "knowing" element of the crime.'" *United States v. Ashby*, 864 F.2d 690, 693–94 (10th Cir.1988) (quoting *United States v. Manriquez Arbizo*, 833 F.2d 244, 248) (10th Cir.1987)), *cert. denied*, —— U.S. ——, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990).

When someone knows enough to put him on inquiry, he knows much. If a person with a lurking suspicion goes on as before and avoids further knowledge, this may support an inference that he has deduced the truth and is simply trying to avoid giving the appearance (and incurring the consequences) of knowledge.

*United States v. Ramsey*, 785 F.2d 184, 189 (7th Cir.), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2924, 91 L.Ed.2d 552 (1986).

■ This instruction is rarely appropriate, however, because it is a rare occasion when the prosecution can present evidence that the defendant deliberately avoided knowledge. *See United States v. Alvarado*, 838 F.2d 311, 314 (9th Cir.), *cert. denied*, 487 U.S. 1222, 108 S.Ct. 2880, 101 L.Ed.2d 915 (1988); *United States v. Garzon*, 688 F.2d 607, 609 (9th Cir.1982); *United States v. Murrieta–Bejarano*, 552 F.2d 1323, 1325 (9th Cir.1977). We emphasize that the deliberate ignorance instruction should be given *only* when evidence has been presented showing the defendant purposely contrived to avoid learning the truth. *See United States v. Markopoulos*, 848 F.2d 1036, 1040 (10th Cir.1988); *Alvarado*, 838 F.2d at 314 ("[T]he facts must support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution."); *United States v. Littlefield*, 840 F.2d 143, 147–50 (1st Cir.), *cert. denied*, 488 U.S. 860, 109 S.Ct. 155, 102 L.Ed.2d 126 (1988); *United States v. White*, 794 F.2d 367, 371 (8th Cir.1986).

■ The evidence must establish that the defendant had subjective knowledge of his criminal behavior. Such knowledge may not be evaluated under an objective, reasonable person test. *See United States v. Jewell*, 532 F.2d 697, 707 (9th Cir.) (Kennedy, J., dissenting) ("The failure to emphasize, as does the Model Penal Code, that subjective belief is the determinate factor, may allow a jury to convict on an objective theory of knowledge—that a reasonable man should have inspected the car and

would have discovered what was inside."), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976);[2] *contra United States v. Nicholson*, 677 F.2d 706, 710–11 (9th Cir.1982) ("The circumstances surrounding the investment opportunity presented to the defendant would have put *any reasonable person* on notice that there was a 'high probability' that the undisclosed venture was illegal.") (emphasis added).

■ The deliberate ignorance instruction must not be given unless evidence, direct or circumstantial, shows that defendant's claimed ignorance of an operant fact was deliberate. While the same evidence cannot be used as proof for the mutually exclusive categories of actual knowledge of an operant fact and deliberate ignorance of that same fact, it is possible for the government to present evidence showing the defendant had actual knowledge and evidence of defendant's avoidance of that same knowledge. *See, e.g., Ochoa–Fabian*, 935 F.2d at 1142 ("[W]here, as here, the evidence supports both actual knowledge and deliberate ignorance, the instruction is properly given."); *Sanchez–Robles*, 927

F.2d at 1074 (" '[I]f there is evidence of both actual knowledge *and* of deliberate ignorance, a [deliberate ignorance] instruction is appropriate.' " (citation omitted) (emphasis in original)). However, the deliberate ignorance instruction must not be tendered to the jury unless sufficient independent evidence of deliberate avoidance of knowledge has been admitted.[3]

We emphasize, the same fact or facts cannot be used to prove both actual knowledge *and* deliberate indifference because the two are mutually exclusive concepts. If evidence proves the defendant actually *knew* an operant fact, the same evidence could not *also* prove he was *ignorant* of that fact. Logic simply defies that result.

"The danger in giving the instruction where there is evidence of direct knowledge but no evidence of avoidance of knowledge is that the jury could still convict a defendant who merely should have known about the criminal venture." *Manriquez Arbizo*, 833 F.2d at 249. Conviction because the defendant "should have known" is tantamount to conviction for negligence, contrary to section 841(a) which requires intentional misbehavior. *See*

---

2. The content of the deliberate ignorance instruction is modeled after section 2.02(7) of the Model Penal Code. *"Requirement of Knowledge Satisfied by Knowledge of High Probability.* When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist." As noted in the comments to this provision, "The original draft ... required only that there be a 'substantial probability' of the fact.... This was changed to 'high' probability in the view that 'substantial' did not imply a sufficient level of probability and weakened the distinction between knowledge and recklessness as modes of culpability." *Id.* comment 9 n. 42. The Ninth Circuit translated that guidance into a two-pronged jury instruction. "The jury should have been instructed ... (1) that the required knowledge is established if the accused is aware of a high probability of the existence of the fact in question, (2) unless he actually believes it does not exist." *Jewell*, 532 F.2d at 704 n. 21. This circuit adopted the dual nature provided by section 2.02(7) in *United States v. Glick*, 710 F.2d 639, 643 (10th Cir.1983) (citing *Jewell*, 532 F.2d at 704 n. 2[1] ), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 229 (1984); *cf. United States v. Bright*, 517 F.2d 584, 587–88 (2d Cir.

1975) (applying section 2.02(7) in discrediting use of reckless standard in the deliberate ignorance jury instruction).

3. *See, e.g., Fingado*, 934 F.2d at 1166–67 (deliberate ignorance instruction appropriate when evidence of defendants' awareness of the high probability that he misunderstood the tax laws was established, combined with evidence of defendant's attempts to avoid paying taxes); *Ashby*, 864 F.2d at 694 (deliberate ignorance instruction appropriate when odor of marijuana emanating from car trunk was very strong and driver failed to obtain trunk key); *Manriquez Arbizo*, 833 F.2d at 249 (deliberate ignorance instruction appropriate when defendant cooperated in use of the code word "tires" to mask communications about trash bags full of marijuana, combined with evidence of defendant's direct handling of the trash bags); *Glick*, 710 F.2d at 642 (deliberate ignorance instruction appropriate when defendant, who was an accountant, recognized and ignored blatant violations of accounting principles and auditing standards, acknowledged recognition of improper fees and financing statements and evaluations by his principal and these activities were combined with general knowledge of the corporation's financial activities).

*United States v. Pacific Hide & Fur Depot, Inc.*, 768 F.2d 1096, 1098 (9th Cir.1985) ("It is not enough that defendant was mistaken, recklessly disregarded the truth, or negligently failed to inquire."); *United States v. Kelm*, 827 F.2d 1319, 1324 (9th Cir.1987) (same). *Accord United States v. Beckett*, 724 F.2d 855, 856 (9th Cir.1984); *Murrieta–Bejarano*, 552 F.2d at 1326 (Kennedy, J., dissenting) ("The danger is that juries will avoid questions of scienter and convict under the standards analogous to negligence ... wholly inconsistent with the statutory requirement of scienter."); *United States v. Hanlon*, 548 F.2d 1096, 1101–02 (2d Cir.1977) (condemning the use of the word "reckless" in deliberate ignorance jury instructions); *United States v. Bright*, 517 F.2d 584, 587 (2d Cir.1975) ("A negligent or a foolish person is not a criminal when criminal intent is an ingredient.").

In addition, courts must studiously guard against the danger of shifting the burden to the defendant to prove his or her innocence. *See Murrieta–Bejarano*, 552 F.2d at 1325 ("The effect of a [deliberate ignorance] instruction in a case in which no facts point to deliberate ignorance may be to create a presumption of guilt."); *cf. Sandstrom v. Montana*, 442 U.S. 510, 521, 99 S.Ct. 2450, 2458, 61 L.Ed.2d 39 (1979) (disapproving of jury instructions that contain presumptions which shift the burden of proof of an element of a crime to the defendant).

■ In summary, the deliberate ignorance instruction must not be tendered to the jury unless evidence, circumstantial or direct, has been admitted to show that the defendant denies knowledge of the operant fact and the defendant's conduct includes deliberate acts to avoid actual knowledge of that operant fact. *See United States v. Picciandra*, 788 F.2d 39, 46, 47 (1st Cir.), *cert. denied*, 479 U.S. 847, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986). The form and content of the jury instruction may not suggest to the jury that the defendant's conduct is based on negligence or recklessness. *Cf. Glick*, 710 F.2d at 643 (requirements for content of deliberate ignorance jury instruction).

Turning to the case before us, the district court instructed:

The defendant's knowledge may be established by proof that the defendant was aware of a high probability that the materials were narcotics unless despite this high probability the facts show that the defendant actually believed that the materials were not narcotics. Knowledge that the material[s] were narcotics may be inferred from circumstances that would convince an average ordinary person that this is the fact.

R. Supp. Vol. IV at 90. Mr. Lopez consistently denied actual knowledge of possession of cocaine intended for distribution. Even when viewed cumulatively in the light most favorable to the government, none of the evidence presented at trial is sufficiently probative of the element of deliberation which is essential to the government's hypothesis that Mr. Lopez acted to deliberately avoid knowledge of the presence of drugs in the car to support the deliberate ignorance instruction.

While the circumstances under which Mr. Lopez came to be driving the car were suspicious, without more they are equivocal. " '[T]he rule is that if a party has his suspicion aroused but then *deliberately* omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowlege.' " *Jewell*, 532 F.2d at 700 (quoting G. Williams, *Criminal Law: The General Part*, § 57, at 157 (2d ed. 1961) (emphasis added); *see also Ramsey*, 785 F.2d at 189 (deliberate ignorance is evidenced by defendant with "lurking suspicion" who *"goes on as before and avoids further knowledge"*) (emphasis added). Mr. Lopez testified he suspected at some point the car may have had drugs in it, but he dismissed the idea, reasoning that, "A car that somebody leaves you like that shouldn't have drugs, should it, all the time that I was going to have the car." R. Supp. Vol. II at 41. He testified his suspicions that the car might have been stolen were allayed when the insurance agency issued insurance for the car because he thought that insurance companies had the capacity to cross-check for stolen vehicles

when insurance was applied for and did so routinely. The compartments were built so cleverly into the car's body that it took sophisticated narcotics experts to (a) detect the difference in the type of fastener used for the air vents and (b) find the alternate access through the wheel wells, which was not discovered until the car was dismantled. Even viewed in the light most favorable to the government, these compartments would not have been obvious to an experienced mechanic preparing the car for cross-country travel, even a suspicious mechanic who was looking for clues. *See Glick*, 710 F.2d at 643 (defendant cannot *"deliberately* close his eyes to what would otherwise be *obvious* to him" (emphasis in original)). This case is far removed from those in which the clues of association with the crime charged were so obvious that the clues, combined with suspicion, necessarily implicated the defendant. *See, e.g., Ashby*, 864 F.2d at 694 (strong odor of marijuana); *Glick*, 710 F.2d at 642 (blatant accounting irregularities).

None of the evidence in this case creates a direct or circumstantial connection between the cocaine found in the car and Mr. Lopez' profession of ignorance about the presence of the cocaine. None of the evidence, viewed separately or cumulatively in the light most favorable to the government, leads to the conclusion that despite his profession of ignorance, Mr. Lopez knew there were drugs hidden in the car. *Cf. Jewell*, 532 F.2d at 704 (" 'A court can properly find wilful blindness only where it can almost be said that the defendant actually knew.' " (citation omitted)). Perhaps Mr. Lopez was negligent and *should have* more strongly suspected and more thoroughly investigated the possibility that he was becoming involved in a drug transport operation from an objective standard. But the statute under which Mr. Lopez was convicted requires knowing, intentional conduct and holds the government to proof *under a subjective standard.*

We hold that when the jury was given the deliberate ignorance instruction, Mr.

Lopez was subjected to an inference that he negligently avoided knowledge of the existence of drugs. More importantly, the coupling of this inference with the deliberate ignorance instruction allowed the jury to find that he was guilty if he negligently or foolishly remained ignorant. We cannot allow the verdict to stand when the jury was given the latitude to convict Mr. Lopez of a crime requiring intentional conduct by employing a negligence standard; nor can we allow him to be placed in the position of essentially having to rebut a presumption that he should have known an operant fact. The appeal before us does not present one of the rare cases in which the deliberate ignorance instruction was appropriate.[4]

### III.

■ Having found error in the tendering of the deliberate ignorance instruction, we must determine whether the error was harmless under the circumstances of this case. The standard by which we undertake this last step in our review is very strict. Because we deal with an error of constitutional dimensions, we may only allow the conviction to stand if we find beyond a reasonable doubt that the error was harmless. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *see also Alvarado*, 838 F.2d at 317 (reasonable doubt that the error could have tainted the result is grounds for reversal of the conviction). "If the 'record accommodates a construction of events that supports a guilty verdict, but it does not compel such a construction,' then reversal is necessary." *Sanchez–Robles*, 927 F.2d at 1075 (citation omitted). Thus, at this stage of the analysis we must determine *de novo* whether the evidence before the jury that the defendant had actual knowledge of his criminal activity was so compelling the jury would necessarily find Mr. Lopez guilty beyond a reasonable doubt, even without the deliberate ignorance instruction.

---

**4.** Because we hold that there was insufficient evidence, direct or circumstantial, to warrant tendering the deliberate ignorance instruction to the jury, we do not reach the question of whether the jury instruction given in this case was correct as to form.

After reviewing the record, we do not believe the evidence is so one-sided. We conclude a properly instructed jury could have determined the evidence presented at trial was insufficient to find Mr. Lopez had actual knowledge of his possession of cocaine for distribution when viewed from his perspective as a member of the Spanish-speaking community of Colombian immigrants and taking into consideration his difficulty with the English language.[5] Thus, we have no way of knowing whether the improper instruction was the key to the jury's decision that Mr. Lopez was guilty, or whether the jury concluded the prosecution's version of events was indeed the more credible. Under this circumstance, tendering the improper jury instruction cannot be brushed aside as harmless error.

The judgment of the United States District Court for the District of Utah is REVERSED, and the case is REMANDED for a new trial.

BALDOCK, Circuit Judge, dissenting.

The court errs in this case because it (1) adopts a definition of deliberate ignorance which is inconsistent with Tenth Circuit precedent, (2) holds that the same fact or facts cannot be used to prove both actual knowledge and deliberate ignorance, and (3) requires that the evidence show that defendant "knew there were drugs hidden in the car" for a deliberate ignorance instruction to be proper. Ct. Op. at 1412. Though reasonable minds could differ on the import of the evidence in this case, when viewed in the light most favorable to the government, the evidence supports the district court's decision to give an instruction concerning deliberate ignorance.

The court starts off on the wrong foot with the following statement:

In the context of the instruction we must analyze, "deliberate ignorance" refers to circumstantial evidence that the person against whom it is employed has actual knowledge of a fact in issue. Employing such circumstantial evidence allows the government to prove a defendant had actual knowledge of an operative fact by proving deliberate acts committed by the defendant from which that actual knowledge can be logically inferred. The acts relied upon, however, must be deliberate and not equivocal, otherwise the defendant's acts do not imply the avoidance of knowledge which is the key to the inference of actual knowledge.

Ct. Op. at 1409 (citation omitted). This explanation is faulty for several reasons. First it confuses the means of proof with mens rea. Even in the context of the instruction, deliberate ignorance does not refer to "circumstantial evidence," rather it is a state of mind which the government may prove to satisfy the knowledge requirement of 21 U.S.C. § 841(a)(1).[1] Second, in proving deliberate ignorance, the government is not restricted only to "deliberate acts," rather all acts and omissions of the defendant which support an *inference* of deliberate ignorance are permissible. *See United States v. Talkington*, 875 F.2d 591, 595 (7th Cir.1989) (facts and evidence must support inference of deliberate ignorance); *United States v. White*, 794 F.2d 367, 371 (8th Cir.1988) (same); *United*

---

**5.** Note that criminal behavior is not excused by being part of a cultural minority or by possessing a mere rudimentary understanding of the English language. However, when the prosecution's case rests on inferring actual knowledge beyond a reasonable doubt from circumstantial evidence, the defendant's subjective knowledge and experience are important aspects for the jury to consider.

**1.** For example, the instruction provided in part:

The defendant's knowledge may be established by proof that the defendant was aware of a high probability that the materials were narcotics unless despite this high probability the facts show that the defendant actually believed that the materials were not narcotics.

....

Thus, if you find that the defendant acted with deliberate disregard of whether the materials he possessed were narcotics and with a conscious purpose to avoid learning the truth, the requirement of knowledge would be satisfied unless despite this deliberate ignorance the defendant actually believed that the materials were not narcotics.

IV R.S. 90–91. *See United States v. Gonzalez*, 700 F.2d 196, 204 (5th Cir.1983) ("deliberate ignorance suffices for knowledge for purposes of a § 841(a)(1) conviction.").

*States v. McAllister,* 747 F.2d 1273, 1275 (9th Cir.1984) (same), *cert. denied,* 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 76 (1975). Third, by requiring that acts relied upon to prove deliberate ignorance *be deliberate and unequivocal,* Ct. Op. at 1409, the court in effect revives a rule of sufficiency that evidence cannot be consistent with both innocence and guilt. Such a standard has been soundly rejected. *See* Ct. Op. at 1408; *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954); *United States v. Hooks,* 780 F.2d 1526, 1529–30 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). A defendant's acts and omissions may be equivocal, yet still support an inference of deliberate ignorance—a requirement of deliberate and unequivocal acts to prove deliberate ignorance would supplant the function of the jury. Fourth, in explaining the purpose of a deliberate ignorance instruction, we have consistently defined deliberate ignorance as a conscious purpose to avoid enlightenment or intentional avoidance of knowledge motivated by sufficient guilty knowledge so as to satisfy the statute involved.[2] No good reason exists to depart from these definitions.

In *Manriquez Arbizo,* we noted "that if the evidence against the defendant points *solely* to direct knowledge of the criminal venture, it would be error to give the instruction." 833 F.2d at 248–249 (emphasis supplied). We have long recognized, however, that evidence may allow a jury to find that a defendant "either knew [of the illegality] or deliberately avoided positive knowledge."[3] The evidence may well support both theories. *Ochoa–Fabian,* 935 F.2d at 1141–1142. The court adopts a new limitation on the use of the instruction: "the same evidence cannot be used as proof for the mutually exclusive categories of actual knowledge of an operant fact and deliberate ignorance of that same fact." Ct. Op. at 1410. The court explains:

> We emphasize, the same fact or facts cannot be used to prove both actual knowledge *and* deliberate indifference [sic] because the two are mutually exclusive concepts. If evidence proves the defendant actually *knew* an operant fact, the same evidence could not *also* prove he was *ignorant* of that fact. Logic simply defies that result.

Ct. Op. at 1410 (emphasis in original). The difficulty with this approach is that it assumes that each circumstantial fact admits only of a single inference, knowledge or ignorance, unaffected by the other facts at trial. But circumstantial evidence may be admitted to prove not only a consequential fact (positive knowledge or deliberate ignorance), but also as background evidence, credibility evidence or as proof of an evidential hypothesis. *See* 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 401[06] (1990); 1 D. Louisell & C. Mueller, *Federal Evidence* § 94 at 658–59 (1977). The actual impact of circumstantial evidence depends upon the trier of fact; "relevancy [merely] describes the potential effect which evidence may have upon the perceptions of the trier of fact." *Federal Evidence* § 94 at 652–53. The trier of fact is

**2.** *See United States v. Ochoa–Fabian,* 935 F.2d 1139, 1141–1142 (10th Cir.1991); *United States v. Fingado,* 934 F.2d 1163, 1166 (10th Cir.1991); *United States v. Manriquez Arbizo,* 833 F.2d 244, 248 (10th Cir.1987); *United States v. Glick,* 710 F.2d 639, 642 (10th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 229 (1984); *Griego v. United States,* 298 F.2d 845, 849 (10th Cir.1962).

**3.** *See Glick,* 710 F.2d at 643 ("The evidence is sufficient to enable a jury to find beyond a reasonable doubt that Chisolm's loan packaging business was a fraudulent scheme from its inception, and that Glick either knew it or deliberately avoided acquiring positive knowledge."). *See also Ochoa–Fabian,* 935 F.2d at 1142 ("While a deliberate ignorance instruction is not appropriate when the evidence points solely to direct knowledge, where, as here, the evidence supports both actual knowledge and deliberate ignorance, the instruction is properly given."); *Ashby,* 864 F.2d at 694 (citing circumstances which "provided a reasonable rationale for believing any lack of knowledge was deliberate;" jury apparently instructed on both theories); *Manriquez Arbizo,* 833 F.2d at 249 ("Because the evidence was sufficient for a jury to find beyond a reasonable doubt Arbizo either directly knew or circumstantially knew by deliberately avoiding acquiring knowledge of the contents of the bags, the instruction was appropriate."); *Griego v. United States,* 298 F.2d 845, 849 (10th Cir. 1962) (discussing jury's options when deliberate ignorance at issue).

free to weigh the circumstantial facts, decide upon plausible inferences using reason and experience, and determine guilt beyond a reasonable doubt. *See Holland,* 348 U.S. at 140, 75 S.Ct. at 138 ("[A] jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference.").

Moreover, in these types of cases, the deliberate ignorance instruction is offered in response to a lack-of-positive-knowledge defense, despite suspicious facts and circumstances indicative of a high probability of criminal activity. *See Sanchez–Robles,* 927 F.2d at 1074. The government is never required to prove that defendant was ignorant of a fact; *see* Ct. Op. at 1410; rather, when a defendant interposes this defense, the government may rely upon the suspicious circumstances it has proven (which also may suggest positive knowledge) and claim that any lack of positive knowledge was due to avoidance "motivated by sufficient guilty knowledge to satisfy the statute." *See Manriquez Arbizo,* 833 F.2d at 248. When suspicious circumstances indicative of a high probability of criminal activity exist, the deliberate ignorance instruction merely "informs the jury that it may look at the charade of ignorance as circumstantial proof of knowledge." *Id.; United States v. Perez–Padilla,* 846 F.2d 1182, 1183 (9th Cir.1988). *See also United States v. Ramsey,* 785 F.2d 184, 189 (7th Cir.) ("An ostrich instruction informs the jury that actual knowledge and deliberate avoidance of knowledge are the same thing."), *cert. denied,* 476 U.S. 1186, 106 S.Ct. 2924, 91 L.Ed.2d 552 (1986).

Taken literally, the court's new rule would be at odds with our precedent because some evidence will support both actual knowledge and deliberate ignorance. For example, two of our cases approving deliberate ignorance instructions involved defendants who disclaimed knowledge of sizable quantities of marijuana concealed in vehicles. *Ochoa–Fabian,* 935 F.2d at 1141, 1141–1142; *United States v. Ashby,* 864 F.2d 690, 692, 694 (10th Cir.1988). The smell of the marijuana and each defendant's close proximity to that smell supported an inference of actual knowledge.

Combined with suspicious circumstances, such as the absence of luggage and a travel permit to make a long trip, *Ochoa–Fabian,* 935 F.2d at 1141, or the failure of defendant to obtain a key to the car trunk, *Ashby,* 864 F.2d at 694, the smell of the marijuana *also* supported an inference of deliberate ignorance. *See also United States v. Sanchez–Robles,* 927 F.2d 1070, 1075 (9th Cir.1991) (odor of marijuana in vehicle supported actual knowledge; odor combined with driving vehicle across the border as a favor or for payment would support deliberate ignorance because circumstances would then be suspicious). Thus, contrary to the court's opinion, "the same fact" can "be used to prove actual knowledge <u>and</u> deliberate" ignorance. *See* Ct. Op. at 1410 (emphasis supplied). Moreover, the suspicious circumstances may also be probative of actual knowledge and deliberate ignorance. *See United States v. Jewell,* 532 F.2d 697, 699 n. 1 & 2 (9th Cir.) (en banc) (discussing facts which tended to show positive knowledge and deliberate ignorance), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976).

In summarizing its many cases on this issue, the Ninth Circuit recently explained:

> Cases following *Jewell* show a similar pattern of suspicious circumstances that go beyond direct evidence of the criminal activity itself.
>
> . . . .
>
> On the other hand, a *Jewell* instruction is not appropriate where the only evidence alerting a defendant to the high probability of criminal activity is direct evidence of the illegality itself. "A *Jewell* instruction is not appropriate where the evidence is that the defendant had *either actual knowledge or no knowledge at all* of the facts in question." [*Perez–Padilla,* 846 F.2d at 1183]. (emphasis added).

*Sanchez–Robles,* 927 F.2d at 1074. *Accord United States v. Rivera,* 926 F.2d 1564, 1572 (11th Cir.1991). In cases in which there is "a middle ground of conscious avoidance," there must be direct evidence of criminal activity and suspicious circumstances which support an inference of crim-

inal activity. *Sanchez–Robles,* 927 F.2d at 1075; *Rivera,* 926 F.2d at 1573. In this case, the court acknowledges the suspicious circumstances, but finds them "equivocal." Ct. Op. at 1411 ("While the circumstances under which Mr. Lopez came to be driving the car were suspicious, without more they are equivocal."). To the extent the circumstances are equivocal, they support an inference of deliberate ignorance. *See Black's Law Dictionary* 486 (5th ed. 1979) (defining equivocal as "[h]aving a double or several meanings or senses" and finding it synonymous with ambiguous).

The court declares the deliberate ignorance evidence insufficient in part because "[n]one of the evidence ... leads to the conclusion that despite his profession of ignorance, Mr. Lopez *knew* there were drugs hidden in the car." Ct. Op. at 1412 (emphasis supplied). That is not the proper test because it imposes a requirement of actual or positive knowledge for deliberate ignorance. The deliberate ignorance evidence, when evaluated in the light most favorable to the government, need only show beyond a reasonable doubt that defendant had a conscious purpose to avoid enlightenment, i.e. to avoid knowledge of the narcotics concealed in the vehicle.

*Glick,* 710 F.2d at 642; *Griego v. United States,* 298 F.2d 845, 849 (10th Cir.1962).[4] Actual or positive knowledge is unnecessary. *Turner v. United States,* 396 U.S. 398, 417, 90 S.Ct. 642, 652–53, 24 L.Ed.2d 610 (1970); *Jewell,* 532 F.2d at 701; *Glick,* 710 F.2d at 642.

I disagree with the court's statement that:

> Even when viewed cumulatively in the light most favorable to the government, none of the evidence presented at trial is sufficiently probative of the element of deliberation which is essential to the government's hypothesis that Mr. Lopez acted to deliberately avoid knowledge of the presence of drugs in the car to support the deliberate ignorance instruction.

Ct. Op. at 1411. In this case, some of the evidence supports direct knowledge, some supports deliberate ignorance, and some supports both theories. *See Manriquez Arbizo* at 249. A deliberate ignorance instruction is appropriate "when the evidence before the jury supports a finding of intentional avoidance of knowledge."[5] *United States v. Fingado,* 934 F.2d 1163, 1166 (10th Cir.1991); *Ochoa–Fabian,* 935 F.2d

---

**4.** As the Ninth Circuit recognized in *Jewell, Griego* was cited with approval by the Supreme Court in *Turner v. United States,* 396 U.S. 398, 417 n. 34, 90 S.Ct. 642, 653 n. 34, 24 L.Ed.2d 610 (1970) and again approved in *Barnes v. United States,* 412 U.S. 837, 845 n. 10, 93 S.Ct. 2357, 2363 n. 10, 37 L.Ed.2d 380 (1973). *Jewell,* 532 F.2d at 701.

**5.** It serves little purpose to say that a deliberate ignorance instruction is "rarely appropriate ... because it is a rare occasion when the prosecution can present evidence that the defendant deliberately avoided knowledge." *See* Ct. Op. at 1409 (citing Ninth Circuit cases) & at 1412 ("The appeal before us does not present one of the rare cases in which the deliberate ignorance instruction was appropriate.") First, the relevant inquiry is whether the evidence in each particular case could warrant a jury finding beyond a reasonable doubt that a defendant "had intentionally remained ignorant despite his subjective awareness of facts plainly indicating" the commission of an offense. *See United States v. Glick,* 710 F.2d 639, 642 (10th Cir. 1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 229 (1984). *See also Griego v. United States,* 298 F.2d 845, 849 (10th Cir.1962) ("The test is whether there was a conscious purpose to

avoid enlightenment."). We cannot anticipate the facts of every case in which a deliberate ignorance instruction might be appropriate. Second, our cases suggest that it is *not* "a rare occasion when the prosecution can present evidence that the defendant deliberately avoided knowledge." *See* Ct. Op. at 1409. Until today, we have never reversed a conviction because a deliberate ignorance instruction was given. *See* Ct. Op. at 1410 n. 3 (discussing Tenth Circuit cases). *See also Ochoa–Fabian,* 935 F.2d at 1141–1142 (deliberate ignorance instruction appropriate). *But see United States v. Markopoulos,* 848 F.2d 1036, 1040 (10th Cir.1988) (deliberate ignorance instruction was error as to one defendant, but not reversible error based upon review of instructions as a whole). Third, given the scores of cases on this frequently–appealed point, it is telling that very few cases actually reverse convictions based on an unwarranted deliberate ignorance instruction. *See* Ct. Op. at 1409, 1410–1411 (citing *United States v. Sanchez–Robles,* 927 F.2d 1070, 1075–76 (9th Cir. 1991); *United States v. Pacific Hide & Fur Depot,* 768 F.2d 1096, 1099 (9th Cir.1985); *United States v. Beckett,* 724 F.2d 855, 856 (9th Cir. 1984); *United States v. Garzon,* 688 F.2d 607, 609 (9th Cir.1982)).

1139, 1141–1142. Appellate review of a district court decision to give a deliberate ignorance instruction requires that we view the evidence and the inferences therefrom in the light most favorable to the government. *Fingado*, 934 F.2d at 1166 (citing *United States v. Caliendo*, 910 F.2d 429, 433 (7th Cir.1990) and *United States v. Hiland*, 909 F.2d 1114, 1131 (8th Cir.1990)).

Here, ample evidence supports positive knowledge or deliberate ignorance. The case virtually abounds with suspicious circumstances beyond direct evidence of the criminal activity. *See Sanchez–Robles*, 927 F.2d at 1074. Several facts unmentioned by the court support inclusion of the instruction. Defendant's testimony in this case is not entirely consistent; cross-examination resulted in substantial incriminatory evidence. Where the evidence conflicts, however, our task is to view it in the light most favorable to the government and the deliberate ignorance theory. *Fingado*, 934 F.2d at 1166.

To say that defendant came into possession of the car under "unusual circumstances," Ct. Op. at 1407 & 1411, is an understatement. According to defendant, he met "Juan"[6] through a chance encounter at a restaurant, but declined Juan's offer of employment as a car transporter after speaking with him for one to three minutes. II R.S. 32–33; III R.S. 17. Defendant did not give Juan his address, telephone number or any other instruction on how defendant could be located, yet a week later Juan was outside defendant's apartment, waiting for him. II R.S. 33; III R.S. 18–20. Defendant admitted that he thought it a little strange that Juan had found him. III R.S. 20.

Defendant next accepted $300 to meet Juan "to accept the job he was offering" and to meet Juan in Santa Monica a few weeks later. *Id.* at 24, 26–27. Defendant bought food and paid some household bills with the $300. *Id.* at 24. Defendant testified that he "was worried [about what Juan was trying to get him to do] but [he] was worried more about the lack of money to take care of [his] family." *Id.* at 25. Two weeks later, defendant met Juan in Santa Monica at an arcade. II R.S. 36–37; III R.S. at 29. Defendant expected to be taken to a car dealership as promised by Juan but there was no car dealership; instead defendant accompanied Juan to a parking lot. III R.S. at 23, 29, 61. Juan told defendant that the vehicle used to transport the contraband needed some repairs so that it could be driven to New York, delivered to an open air parking lot, with the keys placed under the carpet and the doors locked. *Id.* at 30. Although defendant asked, Juan did not give the name of the new owner, or any other instructions about delivery. *Id.* at 30–31.

Defendant testified that he was suspicious about the arrangement, III R.S. 40, and he repeatedly testified that he thought the car was stolen.[7] II R.S. 41; III R.S. 30, 37. On direct, defendant also admitted that he was suspicious about the car containing drugs:

> Mr. Trujillo: What were you suspicious about, the car?
>
> Defendant: Could have been a stolen vehicle.
>
> Mr. Trujillo: Did you suspect that it may have drugs in it?
>
> Defendant: Yes, but a car that somebody leaves you like that shouldn't have

---

**6.** Defendant never knew Juan's real or last name. III R.S. 38.

**7.** The court states:
> [Defendant] testified his suspicions that the car might have been stolen were allayed when the insurance agency issued insurance for the car because he thought that insurance companies had the capacity to cross-check for stolen vehicles when insurance was applied for and did so routinely.

Ct. Op. at 1411–1412. While defendant's testimony might support such a conclusion, the actual testimony is equivocal:

> Mr. Trujillo: Did you check whether the car was stolen?
> Defendant: The first thing that I did was go buy insurance because there they know the titles of the cars and they know whether or not it is false.
> Mr. Trujillo: You figured the insurance company would find out whether it was stolen?
> Defendant: Yes.
> Mr. Trujillo: And did they tell you whether the car was stolen?
> Defendant: No.

II R.S. 41.

drugs, should it, all the time that I was going to have that car. II R.S. at 41. Defendant's employer, Juan, was in the best position to tell defendant whether the car was stolen or contained drugs. Despite the meetings with Juan, defendant never asked him about these suspicions. Nor did defendant return the car. This evidence creates an inference of conscious purpose to avoid enlightenment. It is extremely probative of deliberation when one considers the three-week time span involved. Plainly, the jury was entitled to believe that defendant suspected drugs, yet not credit his explanation on why he remained complacent in light of this suspicion. *See Perez–Padilla,* 846 F.2d at 1183 ("The jury was not required to believe Perez–Padilla's self-serving testimony . . . ."). Concerning the car's registration papers, defendant testified that he was not interested in whose name the car was registered, nor about much else concerning the car. III R.S. at 38.[8]

Defendant was given $1,200 to purchase insurance and expenses; the remainder was compensation and defendant figured that he would clear about $500. *Id.* at 31, 55. Defendant kept the car for two weeks and he had no way to contact Juan in the event he decided not to go through with the arrangement. II R.S. 42–43; III R.S. 36. Defendant cleaned the car because it was full of grease and installed fog lights, a new speedometer cable, spark plugs, new oil and adjusted the carburetor. II R.S. 35, 38, 42; III R.S. 40. Although the defendant testified that he did not notice anything different about the car when it was washed, II R.S. 42, the jury was entitled to consider that defendant is a lifelong auto mechanic, I R.S. 197, 205; III R.S. 15–16, who performed significant work on the car, not for one day, but over a period of two weeks during which he inspected it closely. I R.S. 206; II R.S. 42. The state trooper testified that although the vehicle was

modified in a sophisticated fashion with spot welds and pop rivets, the underside of the car was "freshly seal coated with a tar like substance." I R.S. 153–54. To obtain a deliberate ignorance instruction, the government was not required to prove that defendant knew the exact location of the secret compartment or its contents. It is enough that defendant was aware of suspicious circumstances making it highly probable that the car contained narcotics and he deliberately refrained from acquiring positive knowledge of that fact. *See Glick,* 710 F.2d at 643.

The unusual circumstances in this case together with defendant's repeated reservations about those circumstances support the giving of a deliberate ignorance instruction. *See Gonzalez,* 700 F.2d at 204. *See also FDIC v. Antonio,* 843 F.2d 1311, 1314 (10th Cir.1988) ("the fraudulent nature of the loan as well as the exorbitant repayment terms and absurdity of [defendant's] explanation" supported district court's finding that defendant was willfully blind and a member of a conspiracy); *United States v. Aleman,* 728 F.2d 492, 494 (11th Cir.1984) (mysterious stranger, "Fernando," asked defendant to transport briefcase (which contained cocaine) to New York to a friend who would come to defendant's house to retrieve it; deliberate ignorance instruction proper). Defendant spoke with a total stranger for less than three minutes, and a week later the stranger tracked him down and paid him $300 to agree to another meeting. Although concerned about the situation, defendant was more concerned about supporting his family with the money, thereby providing a strong motive to avoid enlightenment. Expecting to be taken to a car dealership for work, defendant met the stranger at an arcade and went to a parking lot. The stranger paid defendant $1,200 to transport a vehicle to a parking lot in New York, but did not give him details about who was to receive

---

**8.** About naming an insured party for the car, the following testimony occurred:

Mr. Schwendiman: How about the person that the car was registered to?

Defendant: I don't know the name. I don't remember.

Mr. Schwendiman: But wait, you were given all the papers there in Santa Monica. You

were given the registration. Didn't he explain what he was giving to you?

Defendant: Yes, I saw the name. I wasn't interested in what the name was.

Mr. Schwendiman: You weren't interested in much about this car, it appears.

Defendant: For sure, really, no.

III R.S. 38.

the vehicle. Although defendant denied that he knew the vehicle contained cocaine, he initially thought the car stolen, thereby "acknowledging the suspicious circumstances surrounding the mission." *See United States v. Villalon,* 605 F.2d 937, 939 (5th Cir.1979). Defendant also was suspicious that the car might contain drugs, yet took no action which would allay those suspicions. When viewed in the light most favorable to the government, all of these suspicious circumstances would enable a jury to find that defendant acted with "a conscious purpose to avoid enlightenment," *Griego,* 298 F.2d at 849, notwithstanding defendant's justification.

A deliberate ignorance instruction "does not authorize conviction of one who in fact does not have guilty knowledge." *Manriquez Arbizo,* 833 F.2d at 248. Despite a reference to objective circumstances,[9] the instructions as a whole plainly conveyed that defendant "could not be convicted on the basis of negligent ignorance of apparent facts nor on the basis of a mistaken, subjective belief of what the [vehicle] contained."[10] *See id.* at 249. The jury was told twice that defendant's knowledge could be established by proof that he was aware of a high probability that the materi-

als were narcotics, unless he actually believed the materials were not narcotics. IV R.S. 90–91. *See Glick,* 710 F.2d at 643 (deliberate ignorance instruction). The jury was told twice that defendant could not be convicted if he lacked knowledge of the narcotics because he was careless, negligent or even foolish. *Id.* at 88–89. Then the jury was instructed that the government would have to prove that defendant "knowingly did an act which the law forbids purposely intending to violate the law." *Id.* at 92. "Knowingly," the jury was told, means "voluntarily and intentionally and not because of accident or mistake or other innocent reason." *Id.* "The purpose of adding the word knowingly is to ensure that no one will be convicted from an act done because of mistake or accident or other innocent reason." *Id.* Taken as a whole, the instructions were adequate and insured that defendant was convicted on the basis of his subjective knowledge.

I would affirm the conviction and therefore respectfully dissent.

---

**9.** The reference was:

Knowledge that the material[s] were narcotics may be inferred from circumstances that would convince an average ordinary person that this is the fact, thus although the Government cannot satisfy its burden of proving defendant's knowledge of showing that the defendant would have obtained such knowledge were he not careless, the Government may satisfy its burden of proving the defendant's knowledge by proof that the defendant deliberately closed his eyes to what otherwise would have been obvious to him.
IV R.S. 90.

**10.** The instruction adopted by the circuit in *Glick* is designed "[t]o insure that a defendant is only convicted if his ignorance is willful, rather than negligent." *Id.,* 710 F.2d at 643. Even given the subjective state-of-mind requirement, a jury is permitted to consider the reasonableness of a claim of negligent ignorance or mistake is assessing whether the defendant honestly acted in such a manner. *See United States v. Cheek,* —— U.S. ——, 111 S.Ct. 604, 611–12, 112 L.Ed.2d 617 (1991) (subjective good faith belief may negate willfulness in criminal tax case, but "the more unreasonable the asserted beliefs or

misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge."). Given a purely subjective standard, the objective reasonableness of a defendant's belief is but one factor which may be considered in determining whether a subjective belief is honestly held. *United States v. Collins,* 920 F.2d 619, 622–23 (10th Cir.1990); *United States v. Mann,* 884 F.2d 532, 537 n. 3 (10th Cir.1989); *United States v. Payne,* 800 F.2d 227, 229 (10th Cir.1986); *United States v. Wainwright,* 413 F.2d 796, 802 n. 3 (10th Cir.1969), *cert. denied,* 396 U.S. 1009, 90 S.Ct. 566, 24 L.Ed.2d 501 (1970). This explanation harmonizes those cases which have mentioned reasonableness in a deliberate ignorance discussion and yet adhered to the subjective state-of-mind requirement. *See United States v. MacDonald & Watson Waste Oil Co.,* 933 F.2d 35, 52 n. 15, 60 (1st Cir.1991); *Sanchez–Robles,* 927 F.2d at 1074; *United States v. Garzon,* 688 F.2d 607, 609 (9th Cir.1982); *United States v. Cincotta,* 689 F.2d 238, 243 n. 2 (1st Cir.), *cert. denied,* 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982); *United States v. Nicholson,* 677 F.2d 706, 710–11 (9th Cir.1982).