953 F.2d 1392
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Noe GALINDO-TORRES, Defendant-Appellant.
 No. 91-2020.
 United States Court of Appeals, Tenth Circuit.
 Jan. 30, 1992.
 
 Before SEYMOUR, BARRETT and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 BALDOCK, Circuit Judge.
 
 
 1
 During a stop at a border patrol checkpoint, Defendant-appellant Jose Noe Galindo-Torres consented to a drug sniffer dog inspection of his borrowed pickup. The dog alerted its handler to the presence of controlled substances at the driver's side door. Defendant was placed in custody. On continued inspection, the dog alerted to the pickup's gas tank located behind the seat in the passenger compartment. Thirty-four pounds of marijuana were discovered in a false compartment in the tank.
 
 
 2
 Defendant was convicted by a jury of possession with intent to distribute less than 50 kilograms of marijuana, 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and sentenced to twenty-one months imprisonment to be followed by three years of supervised release. On appeal, Defendant challenges two jury instructions: (1) a deliberate ignorance instruction, and (2) a false exculpatory statements instruction. He further argues that any error in giving these instructions is not harmless beyond a reasonable doubt. In light of supervening authority on the first jury instruction, we must reverse and remand for a new trial.
 
 I.
 
 3
 The trial court did not have the guidance provided by United States v. Francisco-Lopez, 939 F.2d 1405 (10th Cir.1991), regarding whether a deliberate instruction[1] should be given. In Francisco-Lopez, we indicated that review of a decision to give this instruction is de novo, although the evidence is viewed in the light most favorable to the government. 939 F.2d at 1409. We adopted several principles limiting the use of a deliberate ignorance instruction to insure that a defendant will be tried for his actual knowledge of criminal activity, as opposed to a negligent or reckless failure to recognize criminal activity. See Francisco-Lopez, 939 F.2d at 1409-11. These principles include: (1) the instruction should be rarely given, because the prosecution rarely can prove that the defendant deliberately avoided knowledge, (2) the evidence supporting a deliberate ignorance instruction must be independent from that supporting actual knowledge; the same fact or facts cannot be used to prove defendant's actual knowledge and deliberate ignorance, (3) any acts relied upon to prove deliberate ignorance "must be deliberate and not equivocal," and (4) suspicious circumstances, without a defendant's deliberate undertaking to avoid knowledge, do not warrant a deliberate ignorance instruction. Id. at 1409-11.
 
 
 4
 Substantial similarity exists between the facts of this case and those of Francisco-Lopez. In each, a Spanish speaking defendant[2] claimed to have been provided a vehicle by a remote acquaintance (identified by first name only)[3] for the purpose of driving the vehicle cross-country and leaving it with unnamed and unknown third parties. Compare II R. 68, 71-73 with Francisco-Lopez, 939 F.2d at 1407, 1411-12. Each defendant inspected the vehicle[4] and had suspicions of criminal activity but discounted those suspicions. Compare II R. 74, 91 with Francisco-Lopez, 939 F.2d 1407, 1411-12. Each defendant denied actual knowledge; here, Defendant claimed to be en route to Truth or Consequences, New Mexico, in search of a vehicle in which to install an engine. See II R. 72-74.
 
 
 5
 The government contends that this case is distinguishable from Francisco-Lopez because the alterations made to the gas tank (to conceal contraband) were obvious, whereas the alterations in Francisco-Lopez were cleverly constructed in the body of the vehicle and would not have been obvious even to an experienced mechanic. Id. 939 F.2d at 1413. The Border Patrol agent inspecting the truck's gas tank testified that: (1) the gas tank was behind the seat of the truck, (2) the top two inches of the gas tank could be seen without moving the seat, (3) there were fresh marks on the bolts securing the gas tank to the cab of the truck, (4) some of the gas tank hoses had a "different type of color" and were dusty, (5) one of the hoses appeared to have been removed recently, and (6) the secret compartment would have reduced the truck's gas tank capacity by three-quarters. II R. 38-39, 45. The agents removed the screws that held the seat in an upright position, and noticed fresh bondo (material to fill dents) on the tank. Id. at 39. Upon removal of the tank, the agents noticed a trap door heavily coated with bondo, presumably to eliminate the odor of the marijuana. Id. The agents did not detect the odor of marijuana until they opened the trap door. Id. at 40.
 
 
 6
 Under Francisco-Lopez, this case presents the possibility that a defendant might be convicted on the basis of what he should have known, but negligently failed to inquire about. While the record contains suspicious circumstances, "without more they are equivocal." See Id., 939 F.2d at 1411. Defendant testified that the vehicle did not appear to be a stolen vehicle and there was "nothing abnormal or unusual about it." II R. 74. He testified that he believed that Antonio would "pick up $100 or $150 in this business deal" if he purchased a vehicle without an engine from the junkyard identified by Antonio. Id.
 
 
 7
 Absent in the record is an adequate link between the gas tank and this Defendant's deliberate attempt to avoid knowledge of criminal activity. This is not a case in which the odor of marijuana, combined with the deliberate act of the defendant, such as the failure to obtain a trunk key or to take other steps to identify the actual nature of the scheme, supported an inference of deliberate ignorance. See United States v. Ochoa-Fabian, 935 F.2d 1139, 1142 (10th Cir.1991); United States v. Ashby, 864 F.2d 690, 694 (10th Cir.1988), cert. denied, 494 U.S. 1070 (1990). After Francisco-Lopez, suspicious circumstances alone will not justify the giving of a deliberate ignorance instruction. Id., 939 F.2d at 1411. The clear import of the government's case is that defendant actually knew about the marijuana, or that he should have known because any normal person would have.[5] The latter alternative is an insufficient basis for a deliberate ignorance instruction because deliberate ignorance must "encompass a calculated effort to avoid the sanctions of the statute while violating its substance." United States v. Jewell, 532 F.2d 697, 704 (9th Cir.), cert. denied, 426 U.S. 951 (1976).
 
 
 8
 We cannot conclude that instructing the jury on deliberate ignorance was harmless beyond a reasonable doubt. See Francisco-Lopez, 939 F.2d at 1412-13. While the government certainly produced sufficient evidence from which the jury could infer actual knowledge beyond a reasonable doubt, Defendant, through an interpreter, explained the circumstances and provided corroborating testimony. We have no way of knowing whether the jury concluded that Defendant had actual knowledge of the contraband or based its decision on the deliberate ignorance instruction, which should not have been given. Id.
 
 II.
 
 9
 Defendant next contends that the district court erred in giving a false exculpatory statement jury instruction[6] because no evidence supported it. Defendant also argues that the instruction is only appropriate when a defendant allegedly makes false exculpatory statements upon being informed of or confronted with a criminal charge. See United States v. Tager, 481 F.2d 97, 99-100 (10th Cir.1973) (false exculpatory statements of defendant may be used to prove "consciousness of guilt and unlawful intent"), cert. denied, 415 U.S. 914 (1974).
 
 
 10
 We consider this point for the benefit of the parties on retrial. As the instruction makes clear, it is the conduct of the defendant attempting to explain his innocence which allows the jury to find circumstantial evidence of guilt. While such conduct includes statements made when informed of or confronted with a criminal charge, such conduct also includes statements made by a defendant to prevent detection of criminal activity, regardless of whether the perpetrator of the crime has been discovered. See United States v. Gordon, 712 F.2d 110, 112, 113-14 (5th Cir.1983) (statement made after stop by border patrol agent, but before discovery of secret compartment in vehicle containing marijuana); United States v. Zang, 703 F.2d 1186, 1190 (10th Cir.1982) (letter dictated before fraud uncovered), cert. denied, 464 U.S. 828 (1983). See also United States v. Soundingsides, 820 F.2d 1232, 1233, reh'g denied, 825 F.2d 1468, 1471 (10th Cir.1987) (statement during investigation).
 
 
 11
 The district court's sua sponte instruction on this issue was not an abuse of discretion. According to the border patrol agent at the primary inspection stop, Defendant claimed to be travelling from El Paso to Truth or Consequences in the vehicle of a friend in order to purchase another vehicle. II R. 25-26. When asked who the friend was, Defendant said he did not know. At the secondary inspection point, Defendant gave consent for the sniffer dog and was informed when the dog alerted. II R. 27-28. After being advised of his rights, Defendant told another agent that he was going to Truth or Consequences to buy a motor or an engine (not a vehicle), but he did not know from whom. Id. at 52. Defendant then repeated that he did not know who the name or whereabouts of the person from whom he borrowed the truck and declined to explain why he was travelling at 3:30 am. Id. Thereafter, Defendant requested an attorney. Id.
 
 
 12
 At trial, the Defendant offered a somewhat different explanation. He testified that he did know the name and had some idea of whereabouts of the person from whom he borrowed the truck. Id. at 70-71, 75. He also testified that he did know where he was going in Truth or Consequences to purchase a car body--to a junkyard in Truth or Consequences, where acquaintances of Antonio would be waiting for him and would recognize the truck. Id. at 77-78. Defendant's earlier statements to the contrary were exculpatory and they could be viewed as contradicted by his own version of events at trial. See United States v. Ingram, 600 F.2d 260, 263 (10th Cir.1979). The instruction given by the trial court has been described as "relatively innocuous" because it is up to the jury to decide whether such statements have any significance concerning guilt. Id. Here, the district court modified the instruction further to underscore that it was up to the jury to determine whether any such statements were made. The false exculpatory statement instruction was not reversible error.
 
 
 13
 REVERSED and REMANDED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The deliberate ignorance instruction in this case provided:
 The element of knowledge may be satisfied by inferences drawn from proof that the defendant deliberately closed his eyes to what would have been obvious to him. A finding beyond a reasonable doubt of a conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, the defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact.
 It is entirely up to you as to whether you find any deliberate closing of the eyes, and the inferences to be drawn from any such evidence. A showing of negligence or mistake is not sufficient to support a finding of willfullness or knowledge.
 The required knowledge is established if the defendant is aware of a high probability of the existence of a fact in question, unless he actually believes it does not exist.
 I R. doc. 16. at 8. The first two paragraphs are from 1 Edward J. Devitt & Charles B. Blackmar, Federal Jury Practice & Instructions § 14.09 (1977); the last paragraph follows United States v. Glick, 710 F.2d 639, 643 (10th Cir.1983), cert. denied, 465 U.S. 1005 (1984).
 
 
 [2]
 In each case, the defendant required the assistance of an interpreter at trial. See Francisco-Lopez, 939 F.2d at 1413 n. 5
 
 
 [3]
 Defendant testified that one "Antonio" lent him the truck
 
 
 [4]
 While the government is correct in claiming that Defendant admitted to inspecting the vehicle, the transcript reveals that the Defendant inspected the vehicle to see whether it contained any tools which Antonio might claim were missing when Defendant returned the vehicle. II R. 74
 
 
 [5]
 Defense counsel's cross-examination of one of the border patrol agents illustrates this theory
 Agent Thatcher: There is a bench seat, then there is a gas tank behind the seat. And you could see the top of the gas tank without moving the seat.
 Mr. Ortiz: Okay. And you are trained to see these kinds of things--say a different kind of tubing that goes to the gas tank. When you have that kind of thing, you're trained to see those things, are you not?
 Agent Thatcher: You pick them up after a while.
 Mr. Ortiz: Your normal person off the street, whatever. I don't suppose you're testifying that any one of these people looking at this gas tank would be able to say this looks like a marijuana setup to me. That's not what you're saying, is it?
 Agent Thatcher: I think any normal person could see that the tank has been recently removed by just looking at it and the amount of gas that was in it because they closed down at least three-quarters of the tank. So there is less amount of gas going in there, also.
 II R. 44. Defendant testified that he was loaned the truck with a full tank of gas and did not stop to fill the tank. Id. at 83.
 
 
 [6]
 The instruction provided:
 Conduct of a defendant, including statements knowingly made and acts knowingly done upon being informed that a crime has been committed, or upon being confronted with a criminal charge, may be considered by you in the light of all the other evidence in the case, in determining guilt or innocence.
 If a defendant voluntarily and intentionally offers an explanation, or makes some statement tending to show his innocence, and if the statement is later shown to be false, you may consider whether this circumstantial evidence points to a consciousness of guilt. Ordinarily it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence.
 Whether or not the evidence as to a defendant's voluntary explanation or statement points to a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury.
 A statement or an act is "knowingly" made or done, if made or done voluntarily or intentionally, and not because of mistake or accident or other innocent reason.
 The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.
 I R. doc. 16 at 16. See also 1 Edward J. Devitt & Charles B. Blackmar, Federal Jury Practice and Instructions § 15.12 at 466-67 (1977).